THEODORE C. SHERWOOD, COMMISSIONER OF THE STATE
BANKING DEPARTMENT, v. THE MILFORD STATE
BANK. IN RE PETITION OF JAMES M.
WATERBURY AND CHAUNCEY
MARSHALL.

*Insolvent bank—Collections—Trusts.*

Where a depositor pays his note, held by his bank for collection,
with his check, the drawing of which is warranted by the
state of his account, and the bank is at the time insolvent,
and no money is set apart by it for the owners of the note,
or reaches the hands of the receiver soon after appointed for
the bank, the owners cannot claim that by the transaction a
trust fund is created, which must be treated as such by the
receiver, and paid to them in full, without regard to the
claims of other creditors of the bank.

Appeal from Oakland. (Moore, J.)  Submitted on briefs
October 14, 1892.  Decided December 22, 1892.

Petition for an order directing a receiver to pay a cer-
tain claim in full.  Decree dismissing petition affirmed.
The facts are stated in the opinion.

*Bowen, Douglas & Whiting,* for appellants, contended:

1. The payment by check, the surrender of the note, the charge
   in Crippen's account of the amount of the note as paid, and
   the credit of the amount to the petitioners, made the relation
   between the bank and petitioners that of trustee and *cestui que
   trust.*  The amount of the note became a trust fund in the
   hands of the bank, to be held for petitioners, to be delivered
   to them, and to be used for no other purpose or purposes;
   citing *Carley v. Graves,* 85 Mich. 483; *People v. Bank,* 96 N.
   Y. 32; *Francis v. Evans,* 69 Wis. 115; *Bowers v. Evans,* 71 Id.
   133; *Libby v. Hopkins,* 104 U. S. 303.
2. It was a specific appropriation of a particular fund.  It became
   a special deposit to the credit of petitioners, to be paid to them,
   and not otherwise to be disposed of either by the bank or the

receiver, who took, of course, only the rights of the bank, and no other or different. The violation of this trust would be a fraud, from which neither the bank nor the receiver derived benefit; citing *People v. Bank*, 96 N. Y. 32; *Libby v. Hopkins*, 104 U. S. 303; and though the bank mingled this money with its other assets, so that it cannot be specifically traced, it was, as has been said by this Court, used by the bank either to pay off its debts or to increase its assets, and in either case would benefit its estate, and should be paid on demand by the receiver to petitioners; citing *Carley v. Graves*, 85 Mich. 483; *McLeod v. Evans*, 66 Wis. 401.

*Edward J. Bissell,* for respondent.

DURAND, J.    The petition was filed in this case for an order directing Edward J. Bissell, as receiver of the Milford State Bank, to pay to the petitioners the sum of $488.40, with interest from August 31, 1891.

The evidence shows that the petitioners, on August 18, 1891, sent to the bank for collection a note for that sum, given by W. W. Crippen, the receipt of which was acknowledged by S. H. Wilhelm, the cashier. Crippen was a general depositor of the bank, and on August 31, 1891, had a credit on its books for money which he had deposited from time to time before that date, equal to or greater than the amount of the note. On that day he drew his check for the amount, and gave it to the cashier, who accepted the check, and charged it up against Crippen's account, and delivered up the note to Crippen as paid. The cashier did not forward the money, and, not receiving any returns, the petitioners, on September 15, wrote to inquire about it, and were informed that the bank had failed, and was in the hands of a receiver.

The petitioners insist that the acceptance of the check by the cashier in payment of the note, as stated, is the same in effect as though the money had been actually paid into his hands by Crippen, and by him put into the other funds of the bank to the benefit of the general creditors, or traced into the hands of the receiver, thus giving them

the right to claim that in equity the above amount of money shall be considered as a trust fund in the hands of the receiver, which should be paid to them by him in full, and without regard to the claims of the other creditors of the bank.

The receiver contends that the relation of trustee and *cestui que trust* in relation to this amount does not exist, and bases his contention upon the fact that there was no payment of money for the note by Crippen; that, as a matter of fact, in consequence of the insolvent condition of the bank on the day Crippen gave his check in payment of the note, he had no money on deposit, but only a credit on account of deposits which he had made at different times before that date.

The bank failed on September 9, 1891, and the undisputed testimony shows that at that time the indebtedness, due to its depositors principally, amounted to upwards of $109,000, most of which was owing on August 31, 1891; that the only cash turned over to the receiver was $32.74; that there was not much over $500 cash on hand in the bank at the time the Crippen check was given on August 31; that at that time the bank, besides the general indebtedness stated, was indebted to various parties on account of collections made for them in the usual way customary with banks, to the amount of $2,000 and upwards, which class of indebtedness was increased, until it amounted to more than $3,300 at the time of the failure. No money was at any time set apart for the petitioners by the cashier of the bank on account of the Crippen collection, nor is there any attempt to show or claim made that any money was actually paid by Crippen at the time the note was delivered to him or afterwards on account of this collection, which in any way added to the general assets of the bank, or which could in any way be of benefit to the general creditors of the bank; neither is any showing made that

the check, or its proceeds, in any way got into the hands of the receiver as assets of the bank, or that any of the pro- ceeds or results of that transaction were invested in any property, or used by the bank, either to pay off its debts or to increase its assets, in any manner at all beneficial to the other general depositors of the bank.

If the bank had been paid the money for the note, or if, having taken the check as it did, it had taken the money which it represented, and in either case converted it into another fund or other assets, and it could have been traced into the hands of the receiver by the petition- ers, their right to the order asked for would be clear, under the general rule that, when property held upon trust to keep, use, disburse, or invest in any particular manner is misapplied by the trustee, and converted into different property, or sold, and the proceeds thus misapplied, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or *cestui que trust.* *Cook v. Tullis,* 18 Wall. 341; *Neely v. Rood,* 54 Mich. 134; *Pierce v. Holzer,* 65 Id. 263. But in all these cases it is held that the funds must be clearly traced into the hands of the person sought to be charged, and that if the trust property does not remain, but has been made way with by the trustee, the *cestuis que trustent* have no longer any specific remedy against any part of his estate in his insolvency, but they must come in *pari passu* with the other creditors, and prove against the trustee's estate for the amount due them. This rule has been as steadily adhered to by the courts both of this country and of England as any rule which has ever been adopted for the protection of the general creditors of a bankrupt or of an insolvent.

It is not seriously contended that the claim of the peti- tioners comes within the rule stated, but it is insisted that

94 MICH.—6.

they have the right to the order asked for, under the principle asserted in *Carley v. Graves,* 85 Mich. 483, in which Chief Justice CHAMPLIN said, in relation to the trust fund then under consideration, that "it cannot be specifically traced, but there is enough in the proof to warrant the inference that it has mingled the trust fund with its own individual means, and has rendered it impossible to be specifically traced into other property in its hands, and that it has been used by the company either to pay off its debts or to increase its assets; in either case, it would be to the benefit of its estate;" and under those facts he applied the principle laid down by a divided court in *McLeod v. Evans,* 66 Wis. 401 (28 N. W. Rep. 173), in support of the position, and held that the petitioner was entitled to the order.

Without discussing the extent which the language used in that case would seem to imply a departure from, or rather an enlargement of, the general rule first stated, it is sufficient to say that no such condition exists here. There was no appropriation of the proceeds of the check; no mingling of the money realized from it with the assets of the bank for its own benefit, as there was no money realized from it; nor any use made of it by the bank, either to pay off its debts or to increase its assets. For these reasons no possible benefit could accrue to the general creditors of the bank on account of the transaction referred to. To adopt a rule which would permit the petitioners, under the facts in this case, to impose upon this transaction the character of a trust, enforceable as such against the receiver, without either tracing any of its results into his hands or showing that it was for the benefit of those who have an interest in the assets, thus enabling them, with others similarly situated, to convert to the payment of their own debt the assets of the bank, to the exclusion

of the general depositors, whose money, as it is plain to be seen from the record, was the source from which all the assets of the bank were obtained, would be grossly inequitable, and would be an unwise departure from those safe rules which the courts have adopted and very generally adhered to in relation to the rights and obligations existing between trustees and *cestuis que trustent.*

It follows that the decree of the court below, dismissing the petition in this case, must be affirmed, with the costs of this Court.

The other Justices concurred.