### 12069

## CITIZENS BANK OF PINEWOOD v. BRADLEY, STATE BANK EXAMINER

(134 S. E., 510)

1. CORPORATIONS.—Equity favors distribution of assets of insolvent corporation ratably among creditors.

2. BANKS AND BANKING.—Where bank collecting draft accepted drawee's check on itself and remitted by cashier's check, claim was not preferred on its insolvency.

3. BANKS AND BANKING.—Owner of draft and collecting bank before collection bear relation of principal and agent, but after collection the relation of debtor and creditor.

4. BANKS AND BANKING—CLAIM FOR AMOUNT OF CHECK DRAWN ON INSOLVENT BANK, PROCEEDS OF WHICH WERE NOT RECEIVED BY PAYEE, DUE TO INSUFFICIENCY OF BANK'S FUNDS TO MEET CHECK GIVEN CLEARING HOUSE, HELD NOT ENTITLED TO PRIORITY.—Where bank on which check was drawn remitted to clearing house association by check on another bank, payment of which was refused for insufficiency of funds shortly before drawer bank failed, *held* owner of first check was not entitled to preferred claim against assets of insolvent bank.

---

NOTE.—Trust in proceeds of collection made by a bank when insolvent, see notes in 32 L. R. A., 715; 38 L. R. A. (N. S.), 146; L. R. A., 1917F, 603; 24 A. L. R., 1152; 3 R. C. L., 634; 1 R. C. L. Supp., 868; 5 R. C. L. Supp., 191.

5. BANKS AND BANKING.—Purchaser of cashier's check, on failure of bank before payment of such check, *held* entitled to credit for the amount thereof on note held by bank.

Before WILSON, J., Sumter, July, 1924. Decree modified as to certain claims.

Action by the Citizens Bank of Pinewood against W. W. Bradley, State Bank Examiner, for liquidation of the bank. From a decree allowing priority to certain claims, the bank and Bank Examiner appeal.

*Messrs. Purdy & Bland,* for appellants, cite: *Check not assignment of funds:* Civ. Code, 1922, Sec. 3840. *Where bank makes collection of draft by charging item against account of customer no trust created for benefit of drawer of draft:* 60 S. C., 123; 242 Mass., 181; 136 N. E., 333; 24 A. L. R., 1148. *Cases distinguished:* 81 S. C., 244; 77 S. C., 305; 204 P., 994.

Mr. M. W. Seabrook for Seabrook-Santee River Cypress Lumber Company Claim cites: *Where bank holds draft for collection from its depositor and receives depositor's check in payment bank holds funds in trust for drawer of draft:* 81 S. C., 244; 204 P., 994; 134 Iowa 227; 111 N. W., 825; 10 L. R. A. (N. S.), 928. *Trust funds deposited with general funds in bank account:* 60 S. C., 122; 38 S. E., 453; 104 Ark., 550; 149 S. W., 514; 157 F., 49; 84 C. C. A., 553; 15 L. R. A. (N. S.), 1100; 7 C. J., 751, Note 80.

Mr. A. S. Merrimon for Koiner Flour Mill Claim cites: *Bank agent for collection of drafts deposited with it; proceeds of drafts are trust funds:* 118 S. C., 442; 110 S. E., 789; 7 C. J., 597, 599 and 634; 3 R. S. L., 524 and 558. *Where bank holds draft for collection from its depositor and receives depositor's check in payment, bank holds funds in trust for drawer of draft:* 81 S. C., 244; 62 S. E., 249; 204 P., 994. *Trust funds deposited with general funds in bank account:* 104 Ark., 550; 149 S. W., 514; 157 F., 49; 15 L. R. A. (N. S.), 1100; 7 C. J., 751, note 80.

September 20, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This Court must take judicial notice of the unprecedented clashes of financial institutions and private enterprises, recently occurring, which have shocked the State, and must anticipate in their wake the presentation of innumerable problems for its determination. I regard this, therefore, as a most critical period in the judicial history of this State, and feel the deepest responsibility in deciding the questions, as they arise, upon the most painstaking consideration, lest an erroneous decision will be "drawn into a precedent" fraught with disaster.

I concur in the opinion of Mr. Justice Watts so far as the disposition of the claim of Mrs. M. Ida Mims is concerned, but dissent from the allowance of the other three claims as preferred claims.

The Citizens' Bank of Pinewood has gone upon the rocks, and the controversy is over the salvage. Certain creditors of the bank claim preferences in the distribution of the assets of the defunct institution, which claims to preference are resisted by the State Bank Examiner and the liquidating committee representing all of the creditors, including the depositors. The amounts are small, the principle involved is of vast consequence in its application to numerous other institutions in process of liquidation.

In December, 1922, the bank closed its doors, and on the 29th the State Bank Examiner took charge of its affairs. There is confusion in the "case" as to the dates, but it sufficiently appears that early in 1923 the bank filed a petition in the Court of Common Pleas against the State Bank Examiner, setting out the facts and alleging that the board of directors, with the consent of the stockholders, had consented to liquidate the affairs of the bank; that suits were threatened against the bank, and that it feared its asserts would be wasted. Thereupon, his Honor, Judge

Wilson, Circuit Judge, passed an order authorizing the bank to liquidate its affairs under the sole supervision and control of the examiner and subject to the order of the Court, and enjoined all proceedings aganst the bank, except in the pending cause. In August, 1923, his Honor, Judge Wilson passed a further order requiring that:

"All persons having claims against said bank do file proof of such claims with W. W. Bradley, State Bank Examiner, at Columbia, within 60 days from the date thereof, or that such claim should be barred."

Thereafter he passed a further order, referring it to the master to take proofs of the claims against the bank and report them to the Court, with the order of priorities and with his recommendations as to any payments which should be made by the bank at this time or in the near future. Many claims were filed, and among such claims filed and allowed by the master, the following were allowed preference: Koiner Flour Mills, $359.40; Kaminski Hardware Co., $124.20; Mrs. M. Ida Mims, $204.05. The claim of M. W. Seabrook, $250.00 was disallowed by the master as a perferred claim.

Exceptions were filed to the conclusions of the master as to these four claims, by the examiner, and by Seabrook. The matter coming before his Honor, Judge Wilson, he passed an order dated July 23, 1924, sustaining the report of the master in the allowance of preference to the three first claims stated, and overruling the report in the disallowance of preference to the Seabrook claim. From this decree the bank and the examiner have appealed.

I begin the discussion with the very clear, strong, and just declaration made by the Court (Mr. Justice Woods writing the opinion) in the case of *Livingstain v. Bank,* 77 S. C., 305; 57 S. E., 182; 22 L. R. A. (N. S.), 442; 122 Am. St. Rep., 568:

"No rule of equity appeals more to the judicial conscience

than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

He who claims a departure from this rule must establish his right clearly. It becomes necessary to consider the four claims separately:

First. *The Koiner Claim.* It appears that in November, 1922, H. L. Baxley, the president of the Citizens' Bank of Pinewood, was also engaged in the mercantile business, and purchased a lot of flour from the Koiner Flour Mills, at Richmond, Va. The flour was shipped "order notify" Baxley at Pinewood, and a draft with the bill of lading attached, was drawn upon Baxley for the price of the flour, $359.40. The draft was placed by the Koiner Flour Mill in commercial channels, and on November 22, 1922, was received in due course by the Pinewood Bank for collection and remittance, its correspondent, the forwarding bank, evidently not knowing that Baxley was president of the Pinewood Bank. In some way, not explained, the bill of lading was separated from the draft, and Baxley, on *November 25th,* presented the bill of lading to the railroad company and received the flour. On *December 26th,* Baxley took up the draft for $359.40, with his personal check on the Pinewood Bank, in which he had a deposit sufficient to meet it. The check was charged to Baxley's account on December 27th, and on that day a cashier's check on the Pinewood Bank was remitted to Koiner Flour Mills or to the forwarding bank, in payment of the draft, but before it had time to be returned and presented, the bank examiner took charge of the Pinewood Bank.

The claimant seeks to establish its right to a preference upon the theory that the relation which existed between it and the Pinewood Bank was that of principal and agent, and that the proceeds of the collection was a trust fund in the hands of the bank, which it is able substantially to identify in the hands of the liquidating committee.

A few, a very few, cases in other jurisdiction sustain the contention of the claimant, but the overwhelming majority declare the rule to be that, *before the collection is made,* the relation between the owner of the paper and the collecting bank is that of principal and agent; but that *after the collection has been made,* the relation of debtor and creditor arises. This conclusion is based upon the custom of banks to credit those for whom collections have been made and remit in the bank's usual exchange; the owner of the paper is presumed to have acquiesced in the custom of the collecting bank to mingle the collection with its own funds, assuming the position of a debtor to the owner.

The case of *Milling Co. v. Trust Co.,* 242 Mass., 181; 136 N. E., 333; 24 A. L. R., 1148, decided by a Court of great reputation, with the note attached, contains a masterly discussion of the question at issue. It so nearly corresponds with the facts of the case at bar that an extended reference to it may be justified. In that case a draft with bill of lading attached was drawn upon a customer of the drawer of the draft; the draft was forwarded through a local bank to the defendant trust company for collection; the collecting bank received payment of the draft by check of the drawee upon a deposit with the collecting bank. The collecting bank failed, not having accounted for the draft. The drawer of the draft claimed a preference in the distribution of the assets of the insolvent collecting bank, as nearly a parallel case with the case at bar as could possibly be found. The Court in denying the claim of preference said:

"It is not disputed that the [collecting bank] was the agent of the owner of the draft in question for the purpose of collecting it. The plaintiff [drawer] as principal retained control of it, and could sue the collecting bank for negligence. * * * On the other hand, the * * * collecting bank had such rights in and title to the draft as were necessary to enable it to make the collection. * * * When

the draft was paid to the defendant [collecting bank] from the deposit of the drawees, * * * by their direction, that operated as payment of the draft as against the owner. * * * Ordinarily, when a draft has been paid to the collecting bank, the owner's right of control ends, and the relation between the collecting bank and the owner of the draft ceases to be that of agent to principal, and becomes that of debtor to creditor. * * * 'Upon the collection of a draft or check, the [collecting bank] was not required to keep the proceeds by itself as the plaintiff's property, but might mingle it with its own money, and make itself the plaintiff's debtor for the amount received. As soon as the proceeds became a part of the fund of the [collecting bank] under this arrangement, the plaintiff's right to control it as specific property was gone, and the plaintiff had instead, a right to recover a corresponding sum of money.' * * * 'One who collects commercial through the agency of banks must be held impliedly to contract that the business may be done according to their well-known usages, so far as to permit the money collected to be mingled with funds of the collecting bank.' "

In the note to this case and in L. R. A., 1917 F, 600 there is a multitude of cases sustaining the same conclusion.

In *Bank v. Armstrong*, 148 U. S., 50; 13 S. Ct., 533; 37 L. Ed., 363, it is held that, after a collecting bank has actually collected a draft, the relation between it and the drawer is that of debtor and creditor.

In *Cronheim v. Postal Co.*, 10 Ga., App. 716; 74 S. E., 78, it is held (quoting syllabus by the Court) :

"Where the owner of a check delivers it to a bank for collection, and, before the proceeds are remitted, the bank fails and is placed in the hands of a receiver, the owner is not entitled to priority over the general creditors of the bank."

The precise question at issue was decided in the case of *Bank v. Glanton,* 146 Ga., 786; 92 S. E., 625; L. R. A.,

1917-F, 600, the syllabus of which by the Court is as follows:

"Where one bank sends a draft to another bank for collection without any specific instructions, and, in the usual course of business, the receiving bank collects the draft by accepting a check of the drawee, drawn on itself, and charging the amount thereof against the drawee's account, this transaction does not establish the relation of trustee and *cestui que* trust between the two banks as to the amount of the draft, but it does establish the relation of debtor and creditor, the forwarding bank having no preference over general creditors."

In *Billingsley v. Pollock,* 69 Miss., 759; 13 So., 828; 30 Am. St. Rep., 585, it is held, quoting syllabus:

"Where a bank collects a note by taking a check on itself of one having a sufficient deposit, and sends a draft therefor which is not paid by reason of its suspension, the bank will not be held to be a trustee as to the amount collected, but such creditor will stand on the same footing as other creditors of the bank."

See, also, *McCormick v. Bank,* 15 S. D., 196; 87 N. W., 974. *Gordon v. Rasines,* 5 Misc. Rep., 192; 25 N. Y. S., 767. *Union Bank v. Bank,* 153 Ind., 44; 54 N. E., 97. *Hallam v. Tillinghast,* 19 Wash., 20; 52 P., 329. *Peters v. Murray,* 31 Tex., Civ. App., 259; 71 S. W., 977. *Bowman v. Bank,* 9 Wash., 614; 38 P., 211; 43 Am. St. Rep., 870. *Sunderlin v. Bank,* 116 Mich, 281; 74 N. W., 478. *Westfall v. Mullens,* 58 Minn., 5; 59 N. W., 633. *Bank v. Brightwell,* 148 Mo., 358; 49 S. W., 994; 71 Am. St. Rep., 608. *Bank v. Davis,* 114 N. C., 343; 19 S. E., 280. *Ober v. Cochran,* 118 Ga., 396; 45 S. E., 382; 98 Am. St. Rep., 118. *N. C. Com. v. Bank,* 137 N. C., 697; 50 S. E., 308.

The case of *White v. Bank,* 60 S. C., 122; 38 S. E., 453, is interesting in this connection. There John Rugheimer had drawn three drafts upon customers at Rock Hill. He transmitted them through his local bank in Charleston to

a bank at Rock Hill for collection. The Rock Hill bank collected the drafts in money, but failed to remit the proceeds to Rugheimer, and went into the hands of a receiver. The three drafts amounted to $256. and, under a call for creditors, Rugheimer contended that the relation created was a trust, and that he was entitled to preference in the distribution of the assets of the insolvent bank. The Court did not decide whether, under the circumstances, a trust relation existed, but denied the claim for preference upon the ground that, "even conceding that there was a trust relation between the appellant (Rugheimer) and the bank as to the proceeds of these drafts," the receiver had only received $5 in cash assets of the bank, and there was no fund which could possibly constitute the "res" of a trust. The Court concluded thus:

"For in this case it has not been made to appear that the so-called trust fund, or any part thereof, has been mixed with the assets which went into the hands of the receiver, out of which appellant is claiming priority of payment. To entitle him to such priority he must show that his so-called trust fund, in some form, has gone into the assets of the bank now in the hands of the receiver; and this he has failed to do, so far as appears from the facts before us. He must, therefore, share ratably with the other creditors in the distribution of the assets of this insolvent bank, now in the hands of the receiver."

Prior to the transaction in question, Baxley was, as a depositor, a creditor of the Pinewood Bank to the extent of the balance due upon his deposit account. When he drew his check on the bank for $359.40 in payment of the draft of the Koiner Company, the bank was relieved as his debtor to that extent, and became the debtor of the owner of the draft. The transaction amounted to nothing more than a substitution of one creditor for another, *pro tanto;* nothing was added to the assets of the bank and nothing passed to the liquidating committee. The applicable principle is thus

32—S. C.—136.

expressed in the case of *Bank v. Coffin*, 22 Idaho, 210; 125 P., 816:

"The true rule governing the particular facts of this case is that, if the transaction results in nothing more than an exchange of creditors or the mere cancellation of one liability and the assumption of another, * * * such facts alone are not sufficient to show that the assets of the trustee or its assignee have been increased by such transaction, and therefore there has been no betterment of the estate, and such assets have not been improved or rendered more valuable, and are in no way impressed with a trust."

In *Sherwood v. Milford*, 94 Mich., 78; 53 N. W., 923, a depositor, who had a balance equal to the amount of his note held by the bank for collection, drew a check on the bank for the amount of the note which was accepted by the cashier and charged against his balance. The note was marked paid and surrendered to him. The bank failed without accounting for the collection. No money was realized from the check, and no use was made of it to pay off the debts or increase the assets of the bank. The Court held that the facts were not sufficient to create a trust in favor of the owner of the note.

In *Anheuser v. Clayton*, 56 F., 759; 6 C. C. A., 108, it was held quoting syllabus:

"A bank holding a draft for 'collection and returns,' which accepts a check of the drawee, one of its depositors, and without separating the amount from the general mass of its moneys charges the same to the drawee and credits the drawer on its books, holds the money as agent for the drawer, and not as trustee; and after the bank becomes insolvent, the drawer is a mere general creditor, and not entitled to priority of payment out of the bank's assets."

The Court says:

"Accepting Morris' check in payment of his debt to appellant and charging the amount of it on Morris' account by the bank was but a shifting of its liability, whereby it became

the appellant's debtor and assumed the obligation to pay to it the amount of the check less exchange."

"If the collection has been made simply by a transfer of credits so that no fund came into possession of the bank, or if the bank used the paper or the money realized on it for purposes of its own, the rule seems to be that there will be no fund to which the trust can attach, and therefore it is not enforceable."

Note 32 L. R. A., 717.

By the same process of reasoning, assuming that the relation between the drawer of the draft and the Pinewood Bank was that of a trust, there is no evidence to show (in fact the evidence is conclusive to the contrary) that any *money,* the proceeds of the draft, ever went into the hands of the liquidating committee; and consequently there was no "res" upon which a trust could be imposed. It may be contended that, when Baxley took up the draft with his personal check, it was the same as if he had drawn the money from the paying teller and paid it to the collecting teller in payment of the draft, and that it therefore was a part of the $26,000 in cash turned over to the liquidating committee. The precise contention was made in the case from Massachusetts above referred to (*Milling Co. v. Trust Co.,* 242 Mass., 181; 136 N. E., 333), and answered thus:

"In the case at bar it is clear that the plaintiff [drawer], by making the draft collectible through the [collecting bank], authorized a collection by the method which was actually followed. The 'proceeds' produced were merely a diminution of the debt or account owned by the [collecting bank] to the [drawees, depositors] and a corresponding increase in the trust company's general substance by means of book entries, and there was no actual reduction to possession of anything that could be regarded as the subject matter of a trust. In other words by the reasonable construction of their acts the parties must be held to have contemplated the relationship of debtor and creditor. * * * The plain-

tiff's claim that the proceeds of this collection were held *
* * in trust for the [forwarding bank] or its assignee is
based on one of two theories, neither of which we can
adopt. * * * The other theory is that the transaction by
which the draft was paid was in legal effect the same as
if [the drawees] had drawn from their account through
the paying teller the sum of $3,518 in money, and then
handed it back to the collecting teller in payment of the
draft. But that is not what the debtor did; and the differ-
ence is essential, not a mere matter of form. The payment
made to the bank was not cash, to which the moment before
it had not the slightest claim, and which therefore would
count as wholly separate 'proceeds' of the collection; it
was merely the lessening of one of its own debts, and pro-
ductive of nothing even remotely suggesting a 'res' for a
trust. The difference between the legal significance of the
actual and the assumed courses of action cannot be ignored
or confused."

It seems to me clear, therefore, that after the Pinewood
Bank accepted the check of Baxley in payment of the draft,
the relation between the claimant and the bank was that
of creditor and debtor; that the claimant was put upon
exactly the same plane as all other creditors, and was not
entitled to a preference in the general assets. I think, too,
that even if the relation be considered a trust, the claimant
has utterly failed to trace into the hands of the liquidating
committee any *money,* the "res" upon which a trust could
be imposed.

The transaction was one of ordinary banking business;
the claimant entered into it for his convenience, knowing
that when the collection should be made it would be mingled
with the general funds of the bank, and he be allowed
a credit to the extent of the collection, the same position
exactly as would be occupied by a depositor; and I see no
reason why the Court should strain a point to establish a
trust in favor of one who took the same chances as all other

creditors took, and abrogate the salutary principle that "equality is equity."

Second. *The Kaminski Claim.* It is stated in the argument for the appellant to which no objection appears to have been entered:

"The claims of Koiner Flour Mills and Kaminski Hardware Company are identical in character. * * * By agreement of counsel, the ultimate decision in the flour mill case is to control the hardware company case."

For the reasons stated in the discussion of the Koiner claim, my opinion is that the claimed preference of the Kaminski claim should be disallowed.

Third. *The Seabrook Claim.* It appears that the Santee River Cypress Company had a claim against one Gilbert Du Bose, and had placed the same in the hands of Mr. Seabrook, its attorney, for collection. On December 1, 1922 Du Bose remitted to Seabrook his check on the Pinewood Bank for $250 he at that time having sufficient funds on deposit with which to meet it. On the same day of its receipt, December 2d, Seabrook deposited the Du Bose check to his credit, as attorney, with the First National Bank of Sumter. It was cleared through the Richmond Clearing House Association, which transmitted it to the Pinewood Bank for collection. The latter charged it up to Du Bose's account and remitted to the Clearing House Association a check on the Palmetto National Bank of Columbia for $900 in settlement of the Du Bose check and other items. The check of the Pinewod Bank on the Palmetto Bank was refused for "insufficient funds." Immediately thereafter the bank examiner was called in to take charge of the bank. I can perceive no differentiating circumstances in this claim from that of the Koiner Milling Company and think that it should meet the same fate.

Fourth. *The Mims Claim.* It appears that Mrs. Mims owed the Pinewood Bank a note for $260 dated April 27, 1920, at 8 per cent. with interest

from October 15, 1920; that in December, 1922 Mrs. Mims purchased a cashier's check from the Pinewood Bank for $204.05, payable to the County Treasurer of Florence County for taxes. The check was not presented for payment before the examiner took charge. The Master found that she was entitled to credit for the amount of this check against the note which the bank held against her; which ruling was affirmed by the decree.

I think that under the authorities cited by me in the opinion now pending in the case of Carwile, receiver, against Metropolitan Insurance Company, she should be allowed to set off the worthless check against her note to the bank.

See, also, *Briscoe v. Hamer,* 50 Okl., 281; 150 P., 1101. *State v. Brobston,* 94 Ga., 95; 21 S. E., 146; 47 Am. St. Rep., 142. *Davis v. Co.,* 114 N. C., 321; 19 S. E., 371; 23 L. R. A., 322. *Johnston v. Humphrey,* 91 Wis., 76; 64 N. W., 317; 51 Am. St. Rep., 873. *Bank v. Bank,* 123 Pa., 283; 16 A., 761; 2 L. R. A., 273.

This, being concurred in by Justices Blease and Stabler, becomes the judgment of the Court, which is that the decree of the Circuit Court be modified, as herein indicated.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.

JUSTICE WATTS (dissenting). I am satisfied with the reasoning of E. C. Haynesworth, master, as to the claim of Koiner Flour Mill, as to the claim of Kaminski Hardware Company, and as to the claim of Mrs. M. I. Mims, affirmed by his Honor, Judge John S. Wilson.

I also agree with his Honor in reversing the finding of the master as to the Seabrook claim and in allowing it as a preferred claim out of the assets of the bank.

The exceptions should be overruled, and the judgment of the Circuit Court affirmed.