The contention of the Grand Lodge in this case does not appeal to my judicial conscience. In the first place, it is opposed to the salutary and just principle announced by this Court, tersely expressed by Justice Woods in the case of Livingstain v. Banking Co.,77 S.C. 305; 57 S.E., 182; 22 L.R.A. (N.S.), 442; 122 Am. St. Rep., 568: "No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among *Page 113 
creditors," and approved in the case of Bank v. Bradley, 136 S.C. 511;134 S.E., 510; for if its contention be sustained, over $20,000 of the assets of the defunct bank will be applied to the claim of the Grand Lodge, as a preferred creditor, greatly to the embarrassment of the general creditors.
The facts of the case appear to be as follows:
On June 2, 1926, the Grand Lodge had upon deposit in the saving department of the bank $19,873, at 4 per cent. interest, payable quarterly — January, May, July, October. Neither the principal nor the interest was at that time demandable. The interest was not due until July 1st, and I assume, as is customary, the principal was not demandable until after certain notice would be given. Notwithstanding this fact, and in the absence of all evidence that the Grand Lodge was pressing for its money which it had no right at that time to demand, a written contract was entered into between the bank and the Grand Lodge, by which, in the stated consideration of the deposit indebtedness and the expression of the "willingness" of the Grand Lodge to make an additional deposit of $5,000, the bank "pledged and delivered" to the Grand Lodge a certain bond and mortgage of Collins et al., dated June 10, 1921, for $30,000, as collateral security to "said deposit." No offer was made by the Grand Lodge to deposit the additional $5,000, and no demand was made by the bank for it. It appears that the bond was delivered by the bank to the Grand Lodge, but the mortgage remained in the possession of the bank. In the contract the amount of the deposit was declared to be $20,071.73, which was made up of the principal of the deposit, $19,873, and $198.73, the quarterly interest which was not due until July 1st thereafter.
On September 7, 1926, three months thereafter, the bank closed its doors and was declared insolvent. Charles W. Waring was appointed Receiver of the bank, for liquidation, by an order of Court. The Receiver then obtained from the Court a rule to show cause why the bond should not be *Page 114 
turned over by the Grand Lodge to him for the purpose of foreclosing the Collins mortgage. The Grand Lodge claimed the bond and the mortgage under the contract of pledge above referred to. They were by agreement delivered to the Receiver with the understanding that the bond should be collected and the proceeds held by the Receiver until the controversy between the Grand Lodge and the Receiver should be determined by the Court. The collection was made and the proceeds are now in the hands of the Receiver.
On February 5, 1927, the Grand Lodge filed its petition in the cause in which the Receiver had been appointed, setting out the facts as above outlined. The prayer of the petition is as follows:
"Wherefore, your petitioners pray that an order be issued requiring the Receiver to pay over to the proper officers of the said Lodge the sum of twenty thousand seventy-one and 73/100 ($20,071.73) dollars, with interest at 4 per cent. from the date of deposit of said sum in said bank up to the date of failure of the bank, out of the money collected by him on said bond, the sum being a preferred claim under its lien on said bond."
The Receiver answered the petition denying the right of the Grand Lodge to the order applied for. The matter was then heard by his Honor, Judge Grimball, upon the petition, the answer, the contract of June 2, 1926, and the "stipulation" of counsel set forth in the opinion of Mr. Justice Carter. On June 4, 1927, his Honor, Judge Grimball, filed his decree in which he sustained the pledge of the collateral Collins bond and mortgage, and "ordered, adjudged, and decreed that the Receiver do pay over to the proper officers of the said Grand Lodge the sum of $20,071.73, together with interest thereon at the rate of 4 per cent. per annum from July 1, 1926, to September 7, 1926." His Honor held, over the contention of the Receiver, that the collateral was given under the contract to secure the entire deposit of the Grand Lodge, and not simply the $5,000 additional deposit referred *Page 115 
to in the contract, and that the contract was supported by a valuable consideration.
I think that his Honor has properly construed the contract, but he did not pass upon what to my mind is the crucial issue in the case, the unlawful preference which the bank attempted to confer upon the Grand Lodge, suggested in the appellant's ninth exception, which, however, was not raised in his return.
I adopt the statement made by counsel for the Grand Lodge, in his printed argument:
"In addition to these considerations, it is also to be borne in mind that this contract was made only three months prior to the failure of the bank, and when it may reasonably be presumed that the bank was struggling with financial difficulties and facing possible, if not probable, insolvency. It could hardly be supposed that the bank was entirely solvent only three months before its doors were closed and it passed into the hands of a Receiver."
If that be true, and the Grand Lodge is not now in a position to deny it, it is clear that the bank in an insolvent condition had no right to assign to the Grand Lodge what may be assumed to have been a substantial part of its assets in preference to its general creditors.
There are circumstances which strongly indicate a purpose to prefer the Grand Lodge. The bank was an institution owned and operated by colored people; the Grand Lodge was a colored institution. The Court may take judicial cognizance of the supreme adoration entertained by this class of our citizens for an institution of the kind; doubtless the officers of the bank were connected with it and personally interested in its charitable purposes. Neither the principal nor the interest on the deposit was demandable at the time of the pledge, and no effort appears to have been made by the Grand Lodge to enforce its demands. The interest was not due for 30 days, yet it was included in what was stated as the amount of the deposit. The expressed willingness *Page 116 
to make an additional deposit of $5,000 evidently was suggested to strengthen the consideration of the contract; it was never offered nor demanded. Not that this invalidated the contract which, as held by his Honor, Judge Grimball, needed no other consideration than the outstanding deposit. Circumstances of meticulous care in presenting a bona fide face to a transaction excite suspicion. The fact that the additional deposit was not offered or demanded leads to the conviction that such was never intended; the vagueness of it suggests camouflage.
This is a Court of equity; the Receiver is an officer of the Court; and the two are virtually trustees for the general creditors of the bank. In view of the fact that the point herein suggested was not raised in the answer to the petition, evidently was not presented to the able Judge, for he makes no allusion to it, is barely suggested in the exceptions, it might well have been ignored, but for the serious consequences to the general creditors; and to decide it under these circumstances might work an injustice to the Grand Lodge.
I think, therefore, that the decree should be reversed, and the case remanded to the Circuit Court with leave to the Receiver to amend his answer to the petition as he may be advised and for further proceedings.
MR. JUSTICE BLEASE concurs.