12662

BOATRIGHT v. RANKIN *ET AL.*

(148 S. E., 214)

*Messrs. Barr & Smith,* for appellants,

*Mr. Maham W. Pyatt,* for respondent,

May 14, 1929.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an action upon a check given by Rankin & Tyson to E. O. Boatright for $337.91, upon the Bank of Georgetown, January 21, 1927.

The check was promptly presented to the bank for payment, indorsed by Boatright, on the same day, while the bank was open for business, and at Boatright's request passed to the credit of his deposit account, entered upon his passbook, and charged to the account of Rankin & Tyson who had upon deposit sufficient funds to meet the check.

Later, upon the same day, January 21, 1927, the bank suspended business and was taken over by the State Bank Examiner.

Several days after the closing of the bank the check was returned to Boatright. The transcript shows that the return was made by the "officers of the bank"; but we assume that it was made by the State Bank Examiner who at that time, under the statute, must have been in the exclusive possession of the affairs of the bank for a period not exceeding 30 days.

The plaintiff, Boatright, then brought this action against the drawers of the check, Rankin & Tyson, claiming that by reason of the insolvency of the bank, to the knowledge of its officers, at the time of the deposit of the check by him, he was entitled to rescind the transaction, and be restored to the position occupied by him prior to the deposit; that is, to receive back the check and proceed against Rankin & Tyson upon the cause of action represented by it.

The defendants, in their answer, contend that Boatright, instead of demanding the cash upon presentation of the

check, as he had the legal right to do, preferred to deposit the check to the credit of his account; that by this course the check had been paid; and that Boatright of his own volition had accepted the bank as his debtor and could look only to it.

The plaintiff demurred to the answer of the defendants upon the general ground. The matter having come before his Honor, Judge Shipp, for decision, he filed an order, dated July 24, 1928, sustaining the demurrer and holding: "If the bank was insolvent at the time of the issuance and presentation of the check, and such insolvency was known to the officers of the bank, then they had no right to pay said check, and it was the duty of the officer to return said check to the person presenting it."

From this order the plaintiff has appealed, raising the question of the correctness of his Honor's position.

The cases of *Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510, and *Peurifoy v. Bank,* 141 S. C., 370, 139 S. E., 793, cited in the opinion of the Chief Justice, and many of the cases cited in the argument of counsel, deal with the question of the right of the payee of a check to a preference in the distribution of the assets of an insolvent bank. That is not at all the question presented here. It is entirely immaterial whether Boatright, under the circumstances, could have maintained a claim to preference in the distribution of the assets of the defunct bank, or not. The real point in the case is the applicability, or not, of the sound principle that the acceptance of a deposit by the officers of a bank, with knowledge of its insolvency, is a fraud upon the depositor, and entitles him to a rescission of the contract of deposit. The question arises in many cases, and arises in this, whether the transaction has proceeded to the point where a rescission is impossible.

The authorities are full, sustaining the general principle above stated.

"The rule is well established that, where a customer of the bank deposits checks and drafts for collection at a time when the bank was insolvent and known to be so by its officers and *they had not been collected when the bank closed its doors*, they remain the property of the depositors, although they were endorsed to the bank without qualifications and on their subsequent collection by the Receiver the proceeds may be recovered from him by the depositors." *Holloway v. Dykes* (D. C.), 29 F. (2d), 430; *Richardson v. Coffee Co.* (C. C. A.), 102 F., 785; *Richardson v. Denegre* (C. C. A.), 93 F., 572.

"The general rule is to the effect that acceptance of general deposits by a bank which is hopelessly insolvent to the knowledge of its officers constitutes such a fraud as will entitle the unsuspecting depositor to rescind and recover back the money, or give him a preferential claim, or create a trust *ex maleficio*, provided other conditions sometimes held essential to a recovery, such as augmentation of assets, identification, etc., can be satisfied." Note, 20 A. L. R., 1206, citing many authorities.

"Acceptance of deposits by a bank is a representation of solvency. A bank hopelessly insolvent, receiving deposits from those who confide in its good reputation or in its representations, is held to knowledge that it cannot meet its obligations. Taking deposits under such circumstances is the equivalent of a preconceived purpose not to pay, and is a fraudulent act. The contract of deposit may be rescinded by the depositor and the deposit or its proceeds, if traced, may be recovered in like manner as other trust funds." *Steele v. Allen, Commissioner of Banks*, 240 Mass., 394, 134 N. E., 401, 20 A. L. R., 1203.

"Where a bank, whose officers know it to be hopelessly and irretrievably insolvent at the time, receives money or checks on deposit on the eve of its failure, a fraud is committed on the depositor who is ignorant of the condition of the bank, and he is, therefore, entitled to reclaim the moneys or the proceeds of the checks which he has deposited, or, in

lieu thereof, have the assets of the bank impressed with a trust in the amount of such deposit." *Washington Co. v. Duke,* 126 Wash., 510, 218 P., 232, 37 A. L. R., 611.

" * * * All the authorities agree that the receipt of a deposit by an insolvent bank is a fraud on the depositor, that title to the deposit does not pass, and that the deposit may be followed so long as it can be identified." *Bank v. Idaho Ass'n* (C. C. A.), 8 F. (2d), 922.

In the case of *Knaffl v. Knoxville Banking Co.,* 130 Tenn., 336, 170 S. W., 476, L. R. A., 1915-D, 402, the Randall Powder Company deposited with the bank, at that time known by its officers to be hopelessly insolvent, three checks of its customers, upon banks *other than the depositary bank,* and was credited therewith. The bank forwarded the checks for collection to another bank. Before the checks could be presented by the collecting bank for payment, the depositary bank failed, and the payees of the checks notified the drawers to stop payment, which was done, and the checks were returned by the collecting bank to the assignee of the depositary bank. In a proceeding by the payees of the checks to recover them from the assignee of the depositary bank, the Court held: "That the reception of the checks on deposit by the Knoxville bank, when it was in a condition of hopeless insolvency, known to its managing officers, was a transaction rescindable for fraud, and that the depositor may recover the checks, or their proceeds, if not dissipated or so mixed with other funds that they cannot be identified or traced, is so well settled by our cases as not to require citation."

The distinguishing features between this well-considered and rightly decided case and the case at bar are that in it the checks were drawn upon other banks than the depositary bank, had been forwarded by the depositary bank to a correspondent bank for collection, had not been paid when the depositary bank failed, and were returned by the collecting bank to the assignee of the depositary bank in their un-

changed original shape. The checks having been received by the insolvent bank under circumstances of fraud, it naturally and very properly was held that the title to them had never passed and that they could be recovered by the depositor. If they had been paid to the collecting bank, while the depositor might have impounded the proceeds as a trust fund, he could not have had recourse upon the drawers of the checks, for the transaction would have been closed.

In every case which we have examined in the investigation of this very interesting question, where a check or a draft was involved, the check or draft was upon some other bank or person than the depositary bank, was deposited in the bank, *and was recaptured before it was paid.*

The situation presented in the case at bar is quite different: The check was drawn upon the depositary bank and had been actually paid and canceled; the transaction had been completed; the canceled check was the property of the drawers, who were entitled to its return to them along with other canceled vouchers.

When the plaintiff presented his check to the bank and received credit therefor upon his deposit account, that constituted a payment of the check. It was the same as if the bank had paid the amount of the check to the plaintiff in cash, and he had immediately had the cash passed to the credit of his deposit account; in which event there could not be a doubt but that, of his own volition, the plaintiff established the relation of creditor and debtor between himself and the depositary bank and must look to his debtor for relief.

In *Hermann v. Cohen* (Ala. Sup.), 119 So., 1, upon the matter of the deposit of a check drawn upon the depositary bank, the Court held: "If the bank accepts the deposit and completes the transaction, the risk of failure of the bank is thereafter on the payee depositor."

In 3 R. C. L., 526, it is said: "When a bank credits a depositor with the amount of a check drawn upon it by

another customer, and there is no want of good faith on the part of the depositor, the act of crediting is equivalent to a payment in money. * * * But when the holder presented the check with his pass-book, that the check might be entered as a deposit to his credit, it was a request for the payment of the check; and there can be no distinction between a request for payment in money and a request for payment by a transfer to the credit of the holder."

The plaintiffs delivered to the defendant bank for deposit a check upon the bank by another dealer with it, which was received and the amount entered to the credit of the plaintiffs. The account of the drawer was largely overdrawn at the time, but the bank continued to certify other checks of his presented later. Before the close of banking hours it returned to plaintiffs the check deposited with them as not good. Held that the presentation of the check for deposit was a demand of payment, and the bank, by giving the plaintiffs credit for the amount, closed the transaction and became the debtor of the depositors. *Oddie v. Bank*, 45 N. Y., 735, 6 Am. Rep., 160.

"A credit given for the amount of a check by the bank upon which it is drawn, is equivalent to, and will be treated as a payment of the check. It is the same as if the money had been paid over the counter on the check and then immediately paid back again to the account or for the use for which credit is given." 2 Morse, Banks (6th Ed.), § 451.

As I have indicated above, the point is not material to the present inquiry, but I may as well express my views upon the question whether, under the circumstances, the plaintiff could maintain a claim for a preference in the distribution of the assets of the bank. I really insert them for possible use upon some other occasion, conceding that they are *obiter dicta* in the present controversy.

As I understand the law, a creditor of an insolvent bank is not entitled to a preference unless he is able to establish a trust relation between himself and the bank and be able

to show that the funds or property of the trust can either be identified or traced into the hands of the Receiver of the bank.

In the case at bar I think that the plaintiff has established such trust relation, but that he has offered no evidence that he is able to identify the property of the trust or to trace the funds in the hands of the Receiver.

He presented a check and had it paid by its being passed to his credit, canceled, and charged to the account of the drawer of the check. He was not obliged to do this, and the drawer of the check was not consulted in the matter at all. He chose for his own convenience rather than take the cash to have the amount placed to his credit. It was exactly the same as if he had drawn the money and passed it back to the cashier for deposit. Hence whatever claim he may have as beneficiary of a trust attached, not to the check, but to the money represented by it. If then his duty was to trace the money into the hands of the Receiver, he must, in order to do so, show that there has been an accretion of the assets of the bank by reason of the breach of trust. This he cannot do, for no money passed which could be said to have swelled the assets of the bank. All that was done was to enter a credit to him on the books of the bank and a charge to the drawer of the check.

"In order that a trust fund may constitute a preferential claim against the funds of a national bank in the hands of a Receiver, it must appear that these funds were actually augmented by the receipt of the trust fund. And if the trust fund was created merely by [giving] a check on the same bank drawn by a general depositor in favor of the trustee, the amount of which was then shifted to the latter's credit, there is no right to a preference." *Bank v. Buchanan* (C. C. A.), 12 F. (2d), 891.

"But checks of third persons on the bank with which they are deposited which are paid by crediting the bank and charging the drawers on its books fail to increase the cash

in its possession and form no basis for a preferential payment to the depositor." *Empire Co. v. Carroll* (C. C. A.), 194 F., 593; *Beard v. Pella City* (C. C. A.), 88 F., 375.

This is exactly in line with the decision of this Court in the *Pinewood Bank case,* 136 S. C., 511, 134 S. E., 510, where it was said: "Prior to the transaction in question, Baxley was, as a depositor, a creditor of the Pinewood Bank to the extent of the balance due upon his deposit account. When he drew his check on the bank for $359.40 in payment of the draft of the Koiner Co., the bank was relieved as his debtor to that extent, and became the debtor of the owner of the draft. The transaction amounted to nothing more than a substitution of one creditor for another, *pro tanto;* nothing was added to the assets of the bank and nothing passed to the liquidating committee." See also the quotations from authorities sustaining this proposition set forth in the opinion.

In the case of *Sunderlin v. Bank,* 116 Mich., 281, 74 N. W., 478, the Court said: "There is nothing to show that any tangible thing was received by the bank upon these checks, and consequently there is no such fund in the hands of the Receiver. The doctrine contended for would practically be to permit the establishment of a lien upon all of the property of the bank through a mere matter of bookkeeping." See also *Marvin v. Martin* (C. C. A.), 20 F. (2d), 746.

The rights of the drawers of the check are entitled to some, and quite a good deal of, consideration. They have acted in full compliance with their obligations; they owed the plaintiff and gave him their check on the bank when their deposit balance was sufficient to take care of it; if the plaintiff had called for the cash, he would have received it; he chose not to ask for it but to have his account credited. The drawers did nothing to induce that action; it was done for the convenience of the payee; the result of the exercise of his option, in my opinion, should not be visited upon the drawers.

The judgment of·this Court is that the judgment of the Circuit Court be reversed.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE BLEASE (concurring) : We express no opinion as to the views of Mr. Justice Cothran, which are admittedly *obiter dicta*.

MR. JUSTICE STABLER concurs.

MR. CHIEF JUSTICE WATTS (dissenting) : This action was commenced by the respondent on February 28, 1927, against the appellants for the recovery of the sum of $337.-91, the amount of a check drawn by the appellants in favor of respondent on Bank of Georgetown (defunct), of Georgetown, S. C., together with interest on said amount from January 21, 1927, the date of the check. It is admitted that appellants had ample funds on deposit in said bank at the time said check was drawn and at the time of its presentation for payment to meet the same. The respondent took the check of appellants to Bank of Georgetown and deposited the same to the credit of his (respondent's) account. The amount of said check was duly credited to respondent and an entry to this effect was made in respondent's passbook. Thereafterwards, and on the same day, Bank of Georgetown suspended business and was taken over by the State Bank Examiner as an insolvent banking institution. Several days after the closing of Bank of Georgetown, the said check of appellants was returned by said bank unto respondent and was accepted by him.

Thereafterwards this action was instituted by respondent against appellants for the amount of said check and interest thereon from its date. To the complaint of respondent the appellants answered setting up various defenses. The respondent demurred. to the second and third defenses set up in appellants' answer, and his Honor, Judge Shipp, sustained the demurrer to these defenses upon the grounds set forth in his order. From this order sustaining respondent's demurrer, this appeal is taken.

The exceptions, four in number, should be overruled, as being without merit, under *Citizens' Bank v. Bradley, Examiner,* 136 S. C., 518, 134 S. E., 510; *Peurifoy v. First Nat. Bank of Batesburg,* 141 S. C., 370, 139 S. E., 793, and the judgment should be affirmed.