KNAFFL *v.* KNOXVILLE BANKING & TRUST CO.
Appeal of RAND POWDER CO.

(*Knoxville.* September Term, 1914.)

1. **BANKS AND BANKING.** Insolvency. Rights of depositor. Stopping payment of check.

Where a depositor had the makers of checks stop payment on them after they had been deposited in an insolvent bank and had passed to a correspondent bank, and where, by a subsequent agreement saving the rights of the parties, the checks were collected, their proceeds were held by the receiver in trust for the defrauded depositor. (*Post, pp.* 337-339.)

Acts cited and construed: Laws 1899, ch. 94.

Cases cited and approved: Akin v. Jones, 93 Tenn., 353; Pease v. Bank, 114 Tenn., 693; First Nat. Bank v. Strauss, 66 Miss., 479; Grant v. Walsh, 145 N. Y., 502.

2. **BANKS AND BANKING.** Deposits. Equitable set-off.

Where a company which indorsed a note held by an insolvent bank had been indemnified by the maker of the note, it was not entitled to set off against its liability on the note any part of its deposit in the bank, though the principal on the note was insolvent. (*Post, pp.* 339-341.)

Cases cited and approved: Knaffle v. Trust Co., 128 Tenn., 181; In re Middle District Bank, 9 Cow., 414.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— WILL D. WRIGHT, Judge.

BOWEN & ANDERSON, for appellant.

WRIGHT & JONES, HUGH M. TATE and D. C. WEBB, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The questions for decision in this case arise on the petition of intervention filed by the Rand Powder Company in this (a general creditor's) proceeding, to wind up the affairs of the Knoxville Banking & Trust Company as an insolvent corporation.

The powder company deposited as cash items in the bank on December 12, 1912, three checks of its customers aggregating $1,505.24. The company had the right to check against its deposit account. On the same day the bank forwarded the three checks to its correspondent bank at Cincinnati, where they were credited in like manner in favor of the sending bank on December 13th. On the next day the Knoxville bank closed its doors. At and before the receipt by it of the three checks, it was hopelessly insolvent, and so known to be by its managing officers; and on December 16th its assets were placed in the hands of a receiver in the general creditor's cause referred to. After the receiver was appointed, the powder company telegraphed the several drawers of the checks in its favor, as payee, requests to stop payment, with the evident purpose of causing the checks to return from the banks of the drawers through the channel of transmission to the receiver of the bank of original deposit.

130 Tenn. 22

They were charged against the Knoxville bank by its Cincinnati correspondent and returned to the receiver.

By agreement, saving the right of the parties in interest, the checks were collected, and their proceeds held to await the result of this litigation.

That the reception of the checks on deposit by the Knoxville bank, when it was in a condition of hopeless insolvency, known to its managing officers, was a transaction rescindable for fraud, and that the depositor may recover the checks, or their proceeds, if not dissipated or so mixed with other funds that they cannot be identified or traced, is so well settled by our cases as not to require citation.

In the pending case there is no difficulty in respect to the tracing of the deposited items; the identical checks came into the hands of the receiver after insolvency; and, nothing else appearing, the receiver took them to hold in trust for the defrauded depositor.

We are not concerned with a consideration of any claims that may have been urged had the Cincinnati bank held the checks and sought to establish right thereto. That bank evidently had no cause to withhold the checks from the Knoxville bank and released and returned them, as has been stated.

It is insisted in behalf of the receiver that, when the checks were received and credited by the Cincinnati bank, the right to follow the same as trust funds was lost to the depositor company, which could not by its own volition and act stop payment of the checks, and thereby render them traceable and recoverable.

We cannot hold with this insistence. The depositor did nothing beyond its legal right. By a well-known rule of law it is required that, in order to relief, one who has been defrauded shall act promptly in disaffirmance and self-protection, and it was within the privilege of the depositor to save itself harmless by procuring the drawers of the checks to stop payment.

The checks did not operate as assignments of any parts of their drawers' funds in their banks to the credit of the drawers. Negotiable Instruments Act 1899 (Laws 1899, ch. 94) ; *Akin* v. *Jones,* 93 Tenn., 353, 27 S. W., 669, 25 L. R. A., 523, 42 Am. St. Rep., 921.

Before payment or certification by their banks, the drawers of the checks had a right to countermand payment. *Pease* v. *Bank,* 114 Tenn., 693, 88 S. W., 172.

In the case of *First Nat. Bank* v. *Strauss,* 66 Miss., 479, 6 South., 232, 14 Am. St. Rep., 579, it was, without argumentation, held that such a depositor in an insolvent bank might stop payment and recover.

In *Grant* v. *Walsh,* 145 N. Y., 502, 40 N. E., 209, 45 Am. St. Rep., 626, it appeared that there was a stopping of payment of a check, deposited in an insolvent bank, by the act of the depositor after it had been passed to a correspondent bank, and it was held that the receiver had no enforceable right to the check as against such depositor.

The chancellor, in decreeing in favor of the receiver on this phase of the case, erred.

Another and distinct claim is advanced in its intervening petition by the Rand Powder Company, based

upon the following facts: That company had in the bank a considerable deposit on the date its affairs were placed in the hands of the receiver. The company was at that time indorser on a note executed to it as payee by the King Mountain Coal Company, which note had been discounted in the bank. It is now contended that the King Mountain Coal Company, the primary obligor, is insolvent, and that this fact entitled the powder company to have set off against the note an equivalent amount of its deposit. However, it appears that, since the closing of the doors of the insolvent bank, the powder company has been furnished coal by the maker company in satisfaction of the note obligation, as between themselves; and it therefore cannot stand to be loser, by reason of the coal company's insolvency, in event the receiver compels the indorser to pay. When it pays, equity, looking at substance, will see that it was the maker who paid through the indorser. The claim to equitable set-off fails where the primary obligor, although insolvent, has indemnified the indorser, secondarily liable (*Knaffle* v. *Trust Co.*, 128 Tenn., 181, 188, 159 S. W., 838, 50 L. R. A. (N. S.), 167; *In re Middle District Bank*, 9 Cow. (N. Y.), 414, note); *a fortiori* where the indorser has been satisfied.

To sustain the claim to set-off would be to allow a preference to the powder company over other creditors of the failed bank without any basis therefor on equity.

Knaffl v. Banking & Trust Co.

It falls, most obviously, under the rule denying pref-erence to one occupying the *status* of secondary obligor announced in the recent decision of this court cited above.

The chancellor properly denied that claim. The de-cree below is affirmed as to that feature, but reversed as to the ruling on the checks. Remand for execution of a decree to be entered here in accord with this opin-ion.