A. H. COLE v. J. N. LUNN et al.

Middle Section.   December 1, 1928.

No petition for Certiorari was filed.

Albert A. White, W. B. Marr, Lawrence B. Howard, all of Nashville, for appellant.

Bass, Berry & Sims, of Nashville, for appellee.

DeWITT, J.   This is a contest, in an insolvency proceeding under a general creditor's bill, between Bass as an intervening petitioner and Sanford as trustee in bankruptcy of Lunn, as to the right to a fund of $887.87 on deposit in the American Trust Company to the credit of J. N. Lunn & Company at the time of the filing of the original bill.   The Chancellor held that Bass was entitled to the fund as a trust fund held for himself and fully identified by him as his property.   The trustee in bankruptcy has appealed insisting that it is not a part of the original fund of $1500 claimed to have been impressed with a trust, that fund having been wholly paid out; and that said original fund was never impressed with a trust.

Prior to May, 1924, J. N. Lunn, a house builder, entered into a contract with J. J. Bass to build for him a residence and garage for the sum of $6800.   Bass borrowed $5000 from the American Trust Company, the net sum, $4,735, being placed to his credit. The agreed method of making payments under the contract was for Lunn to present to Bass as they became due, bills for material and labor, Bass to execute orders to the Trust Company to pay them out of said fund, the Trust Company to issue checks therefor to Lunn. This method seemed cumbersome and Lunn induced Bass to sign an order addressed to the American Trust Company as follows:

"I hereby authorize J. N. Lunn to sign orders for money against my loan number 2337, covering property on Cedar Lane."

Pursuant to this order Lunn signed requisitions and obtained $500 and $400 at different times.   Desiring greater freedom in checking on the account, Lunn, with the permission of Bass obtained from the Trust Company the sum of $1500 on May 10, 1924 and deposited it on the same day to the credit of J. N. Lunn & Company. This was done for greater convenience, not for the payment of any particular bills, but to avoid the trouble of going to Bass for the approval of every separate small item.   The weight of the evidence shows that the agreement was that this was to be a special deposit of money to be used solely in paying bills for material and labor incurred in the erection of the buildings, being for the use of Bass and Lunn alone, Lunn obligating himself to draw out this fund only for said purposes, for payment for material and labor claims which if not paid would be a lien upon the premises.   It is clear therefore that this was a fund impressed with a special trust.

Lunn at that time was engaged in the execution of other construction contracts, having many obligations for material and labor. He was also in a straightened financial condition but there is no evidence that this was known to Bass.

On May 10, 1924, the same day on which this deposit was made, Lunn drew checks against this account of J. N. Lunn & Company as follows, to cash, $400; Fred Rohrbach, $200; Moore & Young Lumber Company, $895.45; Nashville Planing Mill, $150; cash $100; and on May 11th he drew a check against this account in favor of Hermitage Hardware Company of $223.91. At the time the $1500 was deposited to the credit of J. N. Lunn & Company there was a credit to that account of $365.98, which Lunn says was a balance advanced to him by another individual for whom he was constructing a house. On May 12, 1924 Lunn deposited to this account of J. N. Lunn & Company the sum of $1000, which sum he claims to have received as an advancement from one Lightman, for whom he was building a house. Lightman did not appear in this case or set up any claim to this fund. The Chancellor held and we think correctly that this $1000 as well as the $365.98 must be treated as the property of Lunn. On May 13, Lunn drew another check on this account for $8.75, leaving finally to the credit of the account of J. N. Lunn & Company the sum of $887.87 and this is the subject of this controversy. Mr. Lunn testified that this sum belongs to Mr. Bass and is a part of the $1500 which he obtained from Bass and was deposited on May 10th. The checks which Lunn drew on May 10th, had they been presented prior to May 12th, would have overdrawn this account to the extent of $103.38. No one appeared to make any claim to the sum of $365.98 standing to the credit of J. N. Lunn & Company on May 10th when the trust fund of $1500 was deposited. In order to follow trust money there must be specific property capable of being identified, into which the trust money has gone. In McDowell v. McDowell, 144 Tenn., 452, 234 S. W., 319, 18 A. L. R., 623, this ancient rule was reaffirmed with a review and differentiation of cases. We have here a case of an individual trustee who mixed the funds of a single cestui que trust with his own account—not such a case as Bragg v. Osborn, 147 Tenn., 381, 248 S. W., 19, in which the trustee deposited in a common account funds belonging to various persons and it would be impossible to trace title to any particular part of the deposits, and the claim of one beneficiary could therefore rise no higher than the claim of others whose money was deposited in the same general fund.

The general rule, followed in our Tennessee cases, is that where a trustee places in a bank account his own money with a beneficiary's, from which account the trustee subsequently withdraws

funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiary's funds which the trustee had no right to use. 26 R. C. L., 1357, 39 Cyc., 539; Bragg v. Osborn, supra; Brocchus v. Morgan, 3 Shannon's Cases, 671. The basis of this presumption is that every man, until the contrary is proven is deemed to have acted honestly and to have done right rather than wrong. See review of cases in an elaborate note under Macey v. Roedenbeck, 227 Fed., 347, 142 C. C. A., 42, following the report of that case in L. R. A. 1916 C 12. This rule was promulgated in England in the case of Knatchbull v. Hallett (1879), 13 Ch. Div., 696, 49 L. J. Ch. N. S., 415, has been rather generally followed in this country, and has been approved by the Supreme Court of the United States in Central National Bank v. Conn, Mutual Life Insurance Company, 104 U. S., 54, 26 L. Ed., 693. Referring to this rule it is declared in the text of 39 Cyc., pages 539-540 as follows:

"This presumption however is possible of complete effect only so long as the amonut of the mingled fund is large enough to contain all the moneys of the cestui que trust and some of the moneys of the trustee, and if the mingled fund is reduced at any time below the amount of the trustee's fund, the latter will be regarded as dissipated except as to the balance remaining in the fund, and sums subsequently added from other sources cannot be treated as a part of the trust funds unless the withdrawals were wrongful and the restoration can under the circumstances be presumed to be of the amounts wrongfully withdrawn."

No question arises here as to the rights of a bona-fide purchaser without notice, as in McDowell v. McDowell, supra. The question is whether or not the fund involved is part of the same money which was transferred by Bass to Lunn as a trust fund. Are the checks issued by Lunn to be applied to the earliest items of the deposit, or to the total items under a presumption that the trustee was paying out of his own moneys as far as possible, and that there was an attempted restoration of amounts wrongfully withdrawn? If the payments were not made for bills incurred under the contract with Bass, then if these presumptions are applied it is upon the theory that although some withdrawals were wrongful—to the extent of the difference between $1500 and $887.87, the trustee was still honest as to the balance remaining. The appellant insists that the trust fund, if it was such, was entirely dissipated and that the fund of $1000 deposited on May 12th cannot be treated as a part of the trust fund or a restoration thereof. The Chancellor held that inasmuch as it did not appear just when the checks were delivered and there was always in the account a credit of at least $887.87, it

must be presumed that the checks were drawn against the $1000 deposit, as well as against the remainder. Thus the $1000 was not treated as a restoration, but as a part of the fund against which the checks were actually drawn.

In Brocchus v. Morgan; supra, the trust fund was traced into a particular bank account. The presumption was applied that money thereafter checked from that account was the trustee's own money deposited first, and that the amount remaining represented the proceeds of the embezzled fund. This amount remaining exceeded the amount of the trust fund. The rule applied was that the checks should be applied to the earliest items of the deposit, whether of the trust fund or the trustee's own money, and such earliest items would be reduced pro tanto. The court said:

"It is a contest between the general creditors of an insolvent firm and complainants as to the distribution of a fund which was clearly the property of complainants and still so continues, unless it has ceased to be theirs by the wrongful act of the firm in appropriating it in violation of the trust reposed in them. If complainants have lost their title to the money, it has been by the operation of a highly technical rule of law, and one so liable to result in injustice, that courts of equity have been compelled to recognize exceptions to it for the purpose of attaining justice. We think the present case falls within one of these well-recognized exceptions, which enables us to avoid a gross wrong to complainants, and which works no injustice to the general creditors, who are only entitled to share in the assets which belonged honestly to their debtors. 1 Story Eq. Jur., secs. 468, 623; Whitley v. Foy, 6 Jones Eq., 34.''

The record before us shows that three checks aggregating $700 were dated, presented and paid on May 10th; that the checks for $895.45 and $150 were dated May 10th. The check for $895.45 was not deposited in any bank, and it is presumed that it was presented on May 13th, the day on which it was paid. The check for $150 was deposited in or cashed by another bank on May 13th. The check for $223.91 was dated May 11th, was not deposited in any bank, was paid on May 13th and it is presumed that it was presented on that day. The remaining check, for $8.75 was dated May 13th and was deposited in, or cashed by, another bank on May 15th.

The evidence does not show that the sums so checked out by Lunn were applied in satisfying debts incurred for material and labor on the buildings of Bass. Mr. Lunn's ledger shows that they were not, and being a private memorandum made at the time of the transactions, when there seems to have been absent any motive for him to falsify his own records, the entries are to be treated as re-

liable. Bass shows that after obtaining the fund of $887.87 during the progress of this cause under an order of the court, by furnishing a refunding bond, it required this amount and several hundred dollars in addition to the total of $6800 for Lunn to complete the buildings. This would tend strongly to show that Bass would not be twice getting the benefit of the fund involved.

The evidence recited shows that the fund of $1000 may be viewed as dissipated by the checks, as they were not paid until after it was deposited. It is insisted that the intention of Lunn was that they should be paid out of the trust funds and that this should govern; but the evidence as to intention is at least equal that the checks were drawn in part against this $1000 fund. The giving of a check does not operate as an assignment of any part of the funds to the credit of the drawer with the bank. Negotiable Instruments Law, chapter 94, sec. 189, Acts of 1899, Shannon's Ann. Code, sec. 3516a197; Knaffl v. Banking & Trust Co., 130 Tenn., 339, 170 S. W., 476; Pease v. Bank, 114 Tenn., 695, 88 S. W., 172; Bryan v. Zarecor, 112 Tenn., 522, 81 S. W., 1252. There being no evidence to rebut it, the presumption must be applied that the checks were drawn against the $1000 fund and that fund must consequently be treated as not intended as a restoration pro tanto of the trust fund. Thus the case of Crawford Co. Comr's v. Strawn, 157 Fed., 49, 15 L. R. A. N. S., 1100, is not apposite, holding that if at any time during the currency of the mingled account, the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated except as to this balance, the sums subsequently added to the account from other sources not being attributed to the trust fund. The rule was also applied, to the facts shown, in Schuyler v. Littlefield, 232 U. S., 707, 58 L. Ed., 806, and Hewitt v. Hayes, 205 Mass., 365, 91 N. E., 332, 137 A. S. R., 448. But in all these cases it was first assumed that the trust funds had been dissipated by withdrawals before any restorations were attempted.

In some of the cases there may be found statements appearing to rule that the dates of the checks are the criteria which must govern, but in many of them the statements are mere dicta arising from a misapprehension of what is called the rule in Clayton's case (1816, Devaynes v. Noble), 1 Meriv., 572, 3 Eng. Rul. Cas., 329. As formulated by Sir William Grant, master of the rolls, the rule is as follows:

"In the case of an account current, such as a bank account, there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably it is the

sum first paid in that is first drawn out,—the first item on the debit side that is discharged by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other.''

This rule arose out of a case involving the application of payments, not an endeavor to follow and identify trust funds. In Knatchbull v. Hallett, supra, it was said that the rule in Clayton's case did not apply to the ordinary case of deposits of money held in trust by a trustee to his own credit in the bank account inextricably mingled with other money of his own and depleted by general checks; that the presumption that the trustee in drawing money from the mixed bank account drew first his own money and left the trust money intact until his own money was exhausted was a stronger presumption than that made in Clayton's case. The rule in Clayton's case applies to a bank account containing deposits of trust funds only by one who held them in a fiduciary capacity for several distinct principals and mingled all in one account, but had on deposit and added no money at all of his own. Furthermore, the language of Sir William Grant in the Clayton case excludes any thought of considering the date of the check as the date of the withdrawal or appropriation. Such a rule would be in conflict with the aforesaid rule that a check is not an appropriation of funds until it has been presented to and accepted by the drawee, and that before acceptance it is inchoate and invests no title in the payee to the fund. Referring to Brocchus v. Morgan, the learned Chancellor in his excellent opinion in this record says:

''In that case Chief Justice Nicholson was writing about a bank account and of funds in bank. He did say, that if he be insolvent, the cestui que trust may have satisfaction out of whatever funds may be found in the bank to his credit which appear by the dates of the deposits and the checks to be the the trust funds so converted. But he was speaking of the debit and credit on the bank's account books, the dates that funds were converted by the presentation of checks. How could it be otherwise when a check might not be presented for days or never at all? Moreover, we know that checks are not always delivered to the payee on the day they bear date, that often a check is given in anticipation of a deposit to be made · to meet it.''

The Chancellor further ·said:

''I am of opinion the dates of appropriation of the funds by the presentation and payment of checks must govern and not the dates the checks were drawn. Under the rules of law which presume Lunn drew against his individual funds so long as he

had any in the account, it appears that at all times the sum of $887.87 has stood as a credit to the account and that it has not been dissipated below this amount.

."Now the $1500 was not paid by Bass to Lunn in discharge of any debt owing by Bass. It was not due Lunn under his contract, nor did Bass make it as a mere advance payment on account. The money was to be placed in a special account so earmarked as to show it was the property of Bass and Lunn and to be paid out only to satisfy the claims of furnishers and laborers and prevent liens from attaching to Bass' property. Lunn was chargeable as a trustee. He had no right to convert this money to his own use, and Bass could have maintained a suit against him to compel its proper application. Lunn's creditors can stand on no higher ground than does Lunn and it results that the petitioner is entitled to the relief sought."

We are entirely satisfied with these conclusions of the Chancellor. In following trust funds a court of equity will, so far as is possible aid the cestui que trust by indulging every reasonable presumption in his favor and give him the benefit of every doubt; but with all this advantage, the object of pursuit must in the end, in order to be charged upon or taken out of the fund, property or estate in which it is alleged to have lodged, be definitely located therein. L. R. A., 1916 C, annotation on page 88. In view of the facts shown and applying only reasonable presumptions, we are of the opinion that the fund involved in this cause has been definitely identified as the property of the appellee. It results that the decree of the Chancellor must be affirmed and it will be so ordered. The costs of the appeal will be adjudged against the appellant and surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.