## CLARENDON COUNTY, S. C., v. CURTIS et al.

### No. 2972.

Circuit Court of Appeals, Fourth Circuit.
Jan. 13, 1931.

Nathaniel B. Barnwell, of Charleston, S. C., for appellant.

Raymond S. Wilkins, of Boston, Mass., and Augustine T. Smythe, of Charleston, S. C. (Laurence Curtis, 2d, of Boston, Mass., on the brief), for appellees.

Before NORTHCOTT, Circuit Judge, and BAKER and GRONER, District Judges.

BAKER, District Judge.

Allen Curtis and others, partners trading as Curtis & Sanger, of Boston and New York, were plaintiffs in the court below, and the county of Clarendon, S. C., was defendant. We shall so refer to them here.

This cause was instituted to recover on four promissory notes aggregating $34,177 executed by the defendant. These notes were made payable to the Bank of Manning, of Manning, S. C., and were by it indorsed in blank without recourse.

Plaintiffs allege that they purchased them from the American Bank & Trust Company of Columbia, S. C., that that bank and the Bank of Manning were merely agents of the defendant for the purpose of negotiating them, and owned no beneficial interest in them, and that the Bank of Manning was only nominal payee.

This is the second time this action has been before this court. Upon the first trial in the court below after hearing the evidence the learned District Judge held that under subsection 1 of section 24 of the Judicial Code (28 USCA § 41(1) the court had no jurisdiction of the cause and entered an order dismissing the same. Upon an appeal to this court the order of the court below dismissing the action for want of jurisdiction was reversed and case remanded. See 31 F. (2d) 877.

Upon a second trial in the District Court a motion to dismiss the case for lack of jurisdiction and other causes was again made and was overruled by the trial court following the holding of this court on the former appeal, and this court now here reiterates its holding set out in 31 F.(2d) 877 for the reason that it finds no substantial difference between the case presented at the former hearing and the one now under consideration.

The Bank of Manning was never in position to lend any one $35,000, the legal limit

to their loan to any one party under the South Carolina law being $15,000.

Mouzon, cashier of the Bank of Manning when the transaction under consideration took place, testified that Miss Wilson, county treasurer of Clarendon county, agreed to draw no checks on the proceeds of the notes until the final outcome of the transaction, in the sale and discount of the notes by some one else. She agreed to wait until the Bank of Clarendon got the proceeds of these notes from some other source before the county would be entitled to draw against the fund.

The county treasurer, Miss Wilson, testified even more in detail at the second trial than at the first on this aspect of the case. She testified:

"The Bank of Manning told me they were getting the money from elsewhere and they would not give me credit for this amount until they received the money. On that understanding, I surrendered the notes and supporting papers. * * * The bank told me this transaction was not going to be a complete and finished transaction until the Bank of Manning got the money from somewhere else. * * * I did not feel at liberty to draw any checks on this fund until the Bank of Manning had gotten the money from somewhere else and so informed us."

All of the notes were payable at the Equitable Trust Company in New York City.

The notes were all indorsed without recourse by the Bank of Manning.

■ The foregoing and other cogent facts in the record bring us to the conclusion that the Bank of Manning was a mere nominal payee and that both the Manning and Columbia Banks were acting as agents for the defendant in handling the notes in controversy in this case and neither had any beneficial interest therein.

As held by this court upon the former appeal, plaintiffs are not assignees of the cause of action of either of the banks, for neither of them had any cause of action to assign, but plaintiffs are the first beneficial holders of the notes and the first who were in position to maintain an action upon them.

The rule applicable in such cases is tersely stated with the supporting authorities by Mr. Justice Sanford in the case of Citizens' Saving Bank v. Sexton, 264 U. S. 310, 313, 44 S. Ct. 338, 339, 68 L. Ed. 703, as follows:

"If, however, it is shown, upon allegation and proof, that the relation of the parties to a note is otherwise than appears from its terms, and that the plaintiff, although apparently assignee, is in reality the payee, the Code provision does not apply and his right to invoke the jurisdiction of the District Court is not restricted by the fact that the suit could not have been prosecuted by the nominal payee. Holmes v. Goldsmith, 147 U. S. 150, 159, 13 S. Ct. 288, 37 L. Ed. 118. Such is the case where the nominal payee was merely the agent of the maker for the purpose of negotiating the note and had no beneficial interest therein or right of action thereon. Blair v. Chicago, 201 U. S. 400, 448, 26 S. Ct. 427, 50 L. Ed. 801; Kirven v. Chemical Co., 145 F. 288, 290, 76 C. C. A. 172, 7 Ann. Cas. 219; Wachusett Bank v. Stove Works (C. C. A.) 56 F. 321, 323; Baltimore Trust Co. v. Screven County (D. C.) 238 F. 834, 836; Commercial Trust Co. v. Laurens County (D. C.) 267 F. 901, 903."

Neither the Bank of Manning nor the Columbia Bank ever held any cause of action against the defendant upon the notes in controversy. There never was a time when either of them could have maintained an action on the notes against the makers. Neither of them ever advanced any money on the notes, nor was either of them ever obligated to do so until the notes could be sold to some other person. They were not executed as evidence of an existing debt, but were executed in order that the payee might negotiate them for Clarendon county.

By indorsing them without recourse the Bank of Manning did not assign any cause of action which it held, for no cause of action had yet arisen on the notes and no cause of action did arise until the plaintiffs advanced money thereon, after they had passed out of the possession of the Bank of Manning and into the possession of the plaintiffs, in whose favor the cause of action then arose. As the notes were payable to the order of the bank, it was necessary for the bank to indorse them so there might be no question about the right of the one who might advance the money thereon to make collection; but, clearly, this indorsement did not assign any cause of action on the notes. The plaintiffs in this action are not assignees of the notes in question but are the first beneficial holders thereof.

The only question for the jury to consider in this case was whether the notes in question had been paid and the obligation thereon extinguished, or whether Curtis & Sanger, the plaintiffs, instead of paying them and extinguishing them, took them over and acquired title thereto by purchase and sale from the Bankers' Trust Company, who held

890

them for the Norfolk & Western Railroad Company. That was the sole question at issue.

If it be conceded that the notes sued upon were nonnegotiable, this would in no way prevent recovery by plaintiffs.

The actual delivery of the notes to the plaintiffs was the first intended delivery, and so they are in substance and fact in the position of original payees.

█ It has been held where a municipal corporation, which is not authorized to issue negotiable bonds, does issue bonds negotiable in form in payment of a debt, recovery may be had upon such bonds as evidence of debt. Pacific Imp. Co. v. City of Clarksdale (C. C. A. 5) 74 F. 528; Dillon on Municipal Corps. (5th Ed.) § 291, note.

█ Even if the notes were nonnegotiable, the plaintiffs as original beneficial holders were entitled to have them performed according to their tenor, which meant the payment of $34,117.00, plus interest, at Equitable Trust Company in the city of New York June 7, 1926.

The county treasurer, Miss Wilson, well knew the notes became due June 7, 1926, that the Bank of Manning did not have the notes, and that they were made payable at the Equitable Trust Company in New York City; yet she admits she did nothing towards paying them off until her attention was called to the notes on that day.

There is no claim that the county of Clarendon ever paid the notes in question to anybody; that is, paid the notes off. What was done in New York when the notes fell due? Were they paid off then or were they sold to Curtis & Sanger?

In Ketchum v. Duncan, 96 U. S. 659, on pages 662, 663, 24 L. Ed. 868, it was said:

"It is as difficult to see how there can be a payment and extinguishment thereby of a debt without any intention to pay it as it is to see how there can be a sale without an intention to sell. * * *

"It is undoubtedly true that it is essential to a sale that both parties should consent to it. We may admit, also, that 'where, as in this case, a sale, compared with payment, is prejudicial to the holders' interest * * * the intent to sell should be clearly proved.' But the intent to sell, or the assent of the former owner to a sale, need not have been expressly given. It may be inferred from the circumstances of the transaction. * * *

"A holder is not warranted to believe that such a person [one not a debtor on the instrument] intended to extinguish the coupons when he hands over the sum called for by them and takes them into his possession. It is not in accordance with common experience for one man to pay the debt of another, without receiving any benefit from his act. We cannot close our eyes to things that are of daily occurrence. * * * *"

The jury was fully instructed by the learned court below on every phase of this case. We find no reversible error in his charge. The jury, by their verdict, found that Curtis & Sanger bought the notes in question upon the failure of Clarendon county to take them up at maturity and had them transferred to them and thereby became the holders thereof, paid their own good money for them, and that there was a sale to Curtis & Sanger of the notes in question by the Equitable Trust Company.

When the notes fell due there was no money in the Equitable Trust Company, where the notes were payable, with which to take them up. Curtis & Sanger, when apprised of that fact, in order to protect their good business reputation, telephoned the holding bank that they would take up the notes, or they should be sent over to them and they would be paid and they would take the notes. That was actually done. The notes were sent over marked paid on the back.

█ When negotiable instruments like these notes turn up marked "paid" on the back, there is an inference or presumption that they have been paid and extinguished, but that is not an absolute presumption. If the party can show that although the stamp "paid" is thereon there was never any intention to pay and that it was placed thereon by error, the presumption would be overthrown and the party would be bound by the instrument.

In other words, when these notes turned up marked "paid" on the back, the burden was upon the plaintiffs Curtis & Sanger to explain that stamp upon the back of the notes and to show to the jury that it was not put there to mean the notes were actually paid and extinguished. The jury were carefully instructed covering this point and from their verdict it is self-evident they did not believe that the stamp "paid" on the back of the notes in question meant that they were actually paid. Curtis & Sanger evidently carried the burden of proof required of them in this instance and convinced the jury that

that stamp did not mean that the notes in question had been actually paid and extinguished.

A careful examination of the law convinces us that the notes in question are valid obligations of the county of Clarendon; that the county of Clarendon is liable to pay the notes in question, together with the interest as therein expressed, unless they had already been paid. The mere fact that the county of Clarendon placed money with the Bank of Manning to take up these notes or pay them off, and that the Bank of Manning had that amount to its credit with the American Bank & Trust Company and instructed the American Bank & Trust Company to pay the notes, is no defense in this case. It was never done.

There was no error, and the judgment of the District Court is affirmed.

Affirmed.