13162

PEURIFOY, RECEIVER, v. BOSWELL *ET AL.*
RICE *ET AL.* v. CITY OF COLUMBIA *ET AL.*

(160 S. E., 156)

108

*Mr. Nath B. Barnwell,* for Clarendon County, appellant,

*Messrs. A. T. Smythe* and *Laurence Curtis, 2nd,* for Curtis & Sanger, appellant,

*Messrs. D. W. Robinson, Jr.* and *D. W. Robinson,* for James E. Peurifoy, Receiver,

*Mr. Charlton Durant,* for Boswell, et al., receivers of the Bank of Manning,

June 2, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE ROBERT LIDE.

This is another of the many controversies which have arisen from the liquidation of the affairs of the American Bank & Trust Company, of Columbia. The American Bank & Trust Company failed to open on the morning of June 26, 1926, and on July 19th James E. Peurifoy was appointed receiver of its assets. The Bank of Manning was a correspondent bank of the American Bank & Trust Company and at the times of the transactions involved in this action, and up to the time of its closing, carried a deposit balance to its credit with such bank.

Under date of December 7, 1925, Clarendon County issued four notes, three of them for $10,000.00 each and one for $4,177.00. Each note contained a promise of the County of Clarendon to pay to the Bank of Manning, Manning, S. C., or order, the sum stated therein, value received, payable at Equitable Trust Company, in the City of New York, with interest from date at the rate of 5 per cent. per annum; the notes were payable on June 7, 1926. This money was borrowed by Clarendon County under the authority of Section 3 of an Act of the General Assembly, being Act No. 211 of the 1925 Acts. The notes were indorsed "without recourse on us" and forwarded by the Bank of Manning to American Bank & Trust Company, its correspondent in Columbia, and by the American Bank they were transferred to Curtis & Sanger, note brokers in New York. They in turn sold the notes to Norfolk & Western Railway Company, of Philadelphia. The disposition of the proceeds at that time does not appear in the record.

The Bank of Manning closed its doors on December 1, 1926, and J. H. Boswell and J. G. Dinkins were appointed Receivers thereof under an order of the Court in Clarendon County, and they have since been liquidating the affairs of that bank. But for the fact that the Manning Bank closed its doors, as has been the unfortunate experience with so many bank institutions in South Carolina and elsewhere within the past few years, the questions in controversy in this action would probably not have arisen.

This is a controversy involving the payment of certain dividends by the Receiver of the American Bank & Trust Company, and while there are a number of questions presented, the real controversy is to whom such dividends shall be paid. The Receiver of the American Bank & Trust Company holds funds sufficient to pay such dividends and is ready to pay the same as he may be directed by the Court.

For convenience we will hereafter refer to the American Bank & Trust Company as the American Bank and to the Bank of Manning as the Manning Bank.

The treasurer of Clarendon County carried a deposit account with the Manning Bank. On June 7, 1926, the date of the maturity of the notes, the county treasurer gave the Manning Bank a check on said bank for the sum of $30,000.00 and a check on another bank for $4,177.00, which represented the face value of the notes. It appears in the agreed statement between the attorneys for the claimants, in the record before this Court, that, "On June 7th, 1926, the date of the maturity of said notes, the amount due on same, according to their tenor, was $35,031.43," and that the amount received by the Manning Bank from the county treasurer was the sum of $34,177.00. It does not appear what provision was made for the payment of the interest on these notes other than in the agreed statement, where we find "the remainder to be paid by the Bank of Manning." At such time none of these notes were in the possession of the Manning Bank. It will be noted that checks for this payment were delivered to the Manning Bank, although according to their terms the notes were payable at the Equitable Trust Company in the City of New York.

On June 4, 1926, the cashier of the Manning Bank wrote to J. P. Matthews, chairman of the board of directors of the American Bank, to the effect that: "The county will be ready to take care of their notes, $34,177.00, which will be due on the 7th." This is the only reference we find in the record, prior to the maturity of the notes, as to any arrangements being made for their payment, except references thereto in correspondence between Curtis & Sanger and the American Bank from May 26th to June 2d. These letters throw no light on the questions now under consideration.

At the time the checks for the payment of these notes were delivered to the Manning Bank by the treasurer of Clarendon County, the cashier of the bank issued this receipt: "Received of Janie M. Wilson, County Treasurer, $34,177.00 to pay school notes due June 7th, 1926."

In the agreed statement it appears that the cashier of the Manning Bank on the same day, in a telephone conversation,

instructed Matthews, of the American Bank, to pay the county notes. It does not appear that any of these parties knew at that time who was the holder of the notes. It seems that Matthews objected on the ground that the account of the Manning Bank did not show a sufficient collected balance at the American Bank, and further that the American Bank was entitled to a fair balance on deposit because of loans that it was carrying for the Manning Bank. The cashier of the Manning Bank then said that he would send an additional remittance, and he claims that Matthews agreed that the American Bank would pay the county notes, while Matthews claims that the promise to pay was based on a sufficient amount being in hand in current collected funds. It appears that on the same day the cashier of the Manning Bank remitted $5,000.00 to the American Bank by draft on Murchison National Bank, of Wilmington, N. C. This draft arrived in Columbia on June 8th and in due course was presented and paid in Wilmington.

According to the records of the American Bank, in evidence in this case, on June 7th there was a balance to the credit of the Manning Bank of $35,463.40; and the remittance of $5,000.00 appears to have been credited on the following day, and at the close of the day's business on June 8th the balance to the credit of the Manning Bank was $40,796.35. According to these records the credit balances of the Manning Bank with the American Bank did not at any time fall below $36,000.00 up to the date the latter closed. As a matter of fact, the American Bank did not remit funds to New York or make arrangements for the payment of these notes.

Curtis & Sanger ascertained on the morning of June 7th that funds had not been provided at the Equitable Trust Company, for the payment of the notes, and telegraphed the American Bank: "Equitable has no instructions to pay thirty-four thousand one hundred seventy-seven dollars Clarendon County notes due today shall we protect for your account. Advise." Upon receipt of this message, and on the

same date, the American Bank wired Curtis & Sanger: "Your wire Clarendon County. Protect we communicating by telephone Clarendon officials today will arrange."

There were several other messages and letters between the parties in regard to the payment of these notes subsequent to June 7th, and it seems that Matthews continued to make excuses to Curtis & Sanger and to the Manning Bank as to why the notes had not been paid. After assurances, excuses, promises, and insistence between the parties, nothing was done, and funds were not provided in New York to pay these notes.

Curtis & Sanger notified the Bankers' Trust Company, in New York, who held the notes for collection, as agents for Norfolk & Western Railway Company, that if the notes were sent to their office they would take them up, and the notes were then presented by Bankers' Trust Company to Curtis & Sanger, who paid them. Curtis & Sanger took the position that they had repurchased the notes with their own funds in order to protect their general reputation as note dealers, and to save the credit of the county, and in order that they should not go by default, and that such was their custom; and that they expected remittance would be made within a short time to meet the notes.

When the notes were presented for payment at the office of Curtis & Sanger, they had been stamped "paid," and the explanation of the officers of the Bankers' Trust Company was that it was their custom to so stamp notes that they sent out for collection, and that they had been so stamped before they had been advised by Curtis & Sanger to send the notes to them to be taken up.

To revert to the affairs of the Manning Bank: At the time the Clarendon County notes became due it was indebted to the American Bank on account of two notes, one for $15,000.00 and another for $10,000.00; the exact maturities of these notes do not appear in the record. These notes had been pledged to J. C. Self or the Bank of Greenwood, along with other collateral, to secure an indebtedness

of $100,000.00. Subsequent to the closing of the American Bank, the Manning Bank was notified that these notes were held at Greenwood and payment demanded. The Manning Bank paid $4,000.00, which was credited on the $10,000.00 note, leaving the $15,000.00 note unpaid and a balance of $6,000.00 due on the other note. It seems that the parties in Greenwood collected nearly enough from the collateral to pay the indebtedness; and the Receiver paid the balance and took up the uncollected securities that had been put up by the American Bank. The two Manning Bank notes then came into the hands of the Receiver with a balance due thereon of $21,000.00.

On the day the American Bank closed there was a balance to the credit of the Manning Bank of $37,179.78, according to the ledger sheet. The two notes aggregating $21,000.-00 were set off against this balance, leaving a balance of $16,179.78; to this amount was later added an interest credit of $41.75 by the Receiver, making the balance of $16,221.-53. These notes were returned to the Manning Bank by the Receiver of the American Bank, together with the collateral which had been pledged as security therefor.

After the Manning Bank had closed, the notes being in the hands of Curtis & Sanger, the question was raised as to the rights of the various parties. The Receiver of the American Bank filed a petition in the cause in which he had been appointed Receiver, that of *Rice et al. v. City of Columbia et al.,* and asked the Court to require the Receivers of the Manning Bank, Clarendon County, and Curtis & Sanger to come into this action and set up whatever claim they might have to the funds in the hands of the Receiver of the American Bank, and that the Court direct him as to payment of the dividends on the Manning Bank's account.

The Receivers of the Manning Bank had filed a claim with the Receiver of the American Bank for such dividends and answering in the cause, asked the Court to approve the set-offs theretofore made by the Receiver, and that the

Manning Bank be adjudged entitled to dividends on the balance of its account at the American Bank.

In its answer Clarendon County made claim for $34,-177.00, the amount paid by it to the Manning Bank in full payment and satisfaction of the indebtedness alleged to be due by the County of Clarendon to the Manning Bank, and further took the position that after the American Bank came into possession of the funds of Clarendon County for the payment and satisfaction of the said notes, the American Bank telegraphed to Curtis & Sanger, through whom the said bank had sold the notes, to pay the same, which instructions were duly carried out by Curtis & Sanger, and that "said evidences of indebtedness in the form of promissory notes, but not negotiable, as aforesaid, were duly marked paid and surrendered to Curtis & Sanger, who now hold said cancelled instruments." Clarendon County further took the position that the sum of $34,177.00 should be deducted from the balance of $37,179.78 to the credit of the Manning Bank in the American Bank, and that such balance should be held by the Receiver of the American Bank to be applied to the cancellation and payment of the notes, if it should be held that they had not been paid, but only taken up or bought by Curtis & Sanger; that the dividends on such amount be held subject to the determination of the issues between Curtis & Sanger and Clarendon County as to the notes; and further that the set-offs be set aside, and that in the event it should be held that Clarendon County is liable for payment of the notes to Curtis & Sanger, it be declared a creditor of the American Bank in the sum of $34,177.00.

Curtis & Sanger answered and set up the claim that they were the owners and holders of the Clarendon County notes; that they had brought an action against Clarendon County in the District Court of the United States for the Eastern District of South Carolina, then pending; that the Manning Bank and the American Bank each acted solely as agents for Clarendon County in all matters connected with the said

notes; and they take the position that in the event Clarendon County should not be held liable to them for payment of said notes they should be declared as creditors of the American Bank and entitled to dividends on the full amount of $34,177.00; and that the Receiver of the American Bank be required to hold the fund until final adjudication.

In reply the Receiver of the American Bank took the position that, after his appointment as Receiver, an order was made by the Court requiring all creditors and claimants against the American Bank to present their claims to the Master of Richland County; that the date of the filing of such claims has long since expired; that two dividends of 25 per cent. each had been paid by the Receiver upon all claims duly presented and allowed against the American Bank; and that the defendant Curtis & Sanger had failed to file any claim, although they had full notice and knowledge of such receivership. Curtis & Sanger then rejoined by taking the position that they had put the Receiver on notice of their possible claim and that in making any distribution of the assets of the American Bank provision should be made for the payment of proper dividends on the account involved to the party ultimately adjudged entitled thereto.

As set up in the answer of Curtis & Sanger and referred to in the answer of Clarendon County, an action had been brought in the United States District Court by Curtis & Sanger against Clarendon County upon the notes. When this case came on for hearing an order was passed dismissing the action on the ground that the United States Court did not have jurisdiction between the parties under subsection 1 of Section 24 of the Judicial Code (28 U. S. C. A., § 41 [1]) : "No district Court shall have cognizance of any suit * * * to recover upon any promissory note or other chose in action in favor of any assignee * * * unless such suit might have been prosecuted in such Court to recover upon said note or other chose in action if no assignment had been made."

Upon appeal to the United States Circuit Court of Appeals, the order dismissing the action was reversed, "because the evidence clearly shows that both the Manning and Columbia banks were acting as agents for defendant in handling the notes sued on, having no beneficial interest therein; the Bank of Manning being a mere nominal payee. Under such circumstances, plaintiffs are not the assignees of the cause of action of either of the banks, for neither of them had any cause of action to assign, but plaintiffs are the first beneficial holders of the notes, and the first who were in position to maintain an action upon them." *Curtis v. Clarendon County,* 31 F. (2d), 877, 879.

The case came up again in the United States District Court and upon trial a verdict was rendered by a jury against Clarendon County and in favor of Curtis & Sanger. An appeal was again taken to the United States Circuit Court of Appeals, and the judgment was affirmed.

That appellate Court finds that the county treasurer "well knew the notes became due June 7, 1926, that the Bank of Manning did not have the notes, and that they were made payable at the Equitable Trust Company in New York City," and that nothing was done towards paying them off until attention was called to the notes on the day they were due. Further that:

"The Bank of Manning was never in position to lend any one $35,000.00, the legal limit to their loan to any one party under the South Carolina law being $15,000.00."

"Neither the Bank of Manning nor the Columbia Bank ever held any cause of action against the defendant upon the notes in controversy. There never was a time when either of them could have maintained an action on the notes against the makers. Neither of them ever advanced any money on the notes, nor was either of them ever obligated to do so until the notes could be sold to some other person. They were not executed as evidence of an existing debt, but were executed in order that the payee might negotiate them for Clarendon County.

"By indorsing them without recourse the Bank of Manning did not assign any cause of action which it held, for no cause of action had yet arisen on the notes and no cause of action did arise until the plaintiffs advanced money thereon, after they had passed out of the possession of the Bank of Manning and into the possession of the plaintiffs, in whose favor the cause of action then arose. As the notes were payable to the order of the bank, it was necessary for the bank to indorse them so there might be no question about the right of the one who might advance the money thereon to make collection; but, clearly, this indorsement did not assign any cause of action on the notes. The plaintiffs in this action are not assignees of the notes in question but are the first beneficial holders thereof.

"The only question for the jury to consider in this case was whether the notes in question had been paid and the obligation thereon extinguished, or whether Curtis & Sanger, the plaintiffs, instead of paying them and extinguishing them, took them over and acquired title thereto by purchase and sale from the Bankers' Trust Company, who held them for the Norfolk & Western Railroad Company. That was the sole question at issue.

"If it be conceded that the notes sued upon were non-negotiable, this would in no way prevent recovery by plaintiffs.

"The actual delivery of the notes to the plaintiffs was the first intended delivery, and so they are in substance and fact in the position of original payees.

"It has been held where a municipal corporation, which is not authorized to issue negotiable bonds, does issue bonds negotiable in form in payment of a debt, recovery may be had upon such bonds as evidence of debt. *Pacific Imp. Co. v. City of Clarksdale* (C. C. A., 5), 74 F., 528; Dillon on Municipal Corps. (5th Ed.), § 291, note.

"Even if the notes were non-negotiable, the plaintiffs as original beneficial holders were entitled to have them performed according to their tenor, which meant the payment

of $34,117.00, plus interest, at Equitable Trust Company in the City of New York June 7, 1926." 46 F. (2d), 888, 889.

One of the exceptions to the decree of the Circuit Judge in the present action is that the Court erred in attempting to decide or pass upon the validity of the notes of Clarendon County to Bank of Manning, held by Curtis & Sanger, or to determine any of the rights or liabilities between said parties with reference thereto; none of said matters being in issue in this action.

The attorney for Clarendon County states in his argument before this Court that: "Neither Curtis & Sanger nor Clarendon County was called upon in this case to fight out the questions arising out of the facts" brought out in this case, "nor was this attempted by them."

Evidently both Curtis & Sanger and Clarendon County desired the issues between them to be adjudicated in the United States Courts and this has been done. The final adjudication in that tribunal has been against Clarendon County, so that Curtis & Sanger will have no further interest in the matters now under appeal before this Court, presuming their judgment has been paid or is collectible. We do not think that the decree of the Circuit Court attempted to adjudicate the questions between these parties and that question will not be considered further.

The decree of the Circuit Judge, after stating the facts and his findings on the issues presented, stated as his conclusion that he had set out the facts "with some particularity to show that the sum of Thirty-four Thousand One Hundred Seventy-seven ($34,177.00) Dollars was never paid over to the American Bank & Trust Company as claimed, so as to enable this Court, or anyone, to fasten upon it, in the hands of American Bank & Trust Company, a trust in favor of the County of Clarendon. The Bank of Manning already had to its credit as above stated, sufficient funds to pay the said notes, and no doubt with perfect reason, assumed that the American Bank & Trust Company would take care

of said notes out of said credit fund as instructed, but it failed to do this."

The decree concluded: "Now, in view of the foregoing, it is ordered and adjudged, that all dividends on said credit of Bank of Manning of Sixteen Thousand Two Hundred Twenty-one Dollars and Fifty-three cents ($16,221.53) be paid over by the Receiver of American Bank & Trust Company to the Receivers of Bank of Manning as part of the assets of the said Bank of Manning."

The appeal to this Court is on behalf of Clarendon County and Curtis & Sanger. The Receivers for the two defunct banking institutions were satisfied with the decree of the Circuit Court and have defended said decree before this Court, while the two parties who have had their litigation in the United States Court have attacked the decree of the Circuit Court.

There are numerous exceptions taken both by Clarendon County and by Curtis & Sanger, which we will not consider separately, because, after all, they narrow down to a few questions stated in somewhat different language by counsel for the parties, but in effect varying slightly. They may be reduced to the following:

Are Curtis & Sanger entitled to dividends from the Receiver of the American Bank on the amount they paid to Bankers' Trust Company, in protecting the notes of Clarendon County?

Was a trust fund created in favor of Clarendon County?

Is Clarendon County entitled to dividends on the amount of $34,177.00 paid to Bank of Manning for the payment of the notes from the assets of the American Bank or from the assets of the Manning Bank?

Is the Bank of Manning entitled to the dividends on the balance of its deposit account with the American Bank & Trust Company after the set-offs?

Were the set-offs by the Receiver of the American Bank proper and with legal authority on account of the indebtedness between the two banks?

After all, these questions may be reduced to one, and that is: To whom shall the Court direct the Receiver of the American Bank to pay the dividends on the deposit account reflected by its books in connection with its business with the Manning Bank?

One position taken by Clarendon County has been that when its county treasurer turned over to the cashier of the Manning Bank checks for the amount of the principal sum of the notes and the bank undertook to obtain payment of the notes, there was a trust fund created for that purpose. Further, that the amount of the deposit account with the American Bank to the credit of the Manning Bank, after instructions by the Manning Bank to the American Bank to pay the notes, constituted a trust fund in the hands of the American Bank for the benefit of Clarendon County. In the decree of the Circuit Judge we find: "In my judgment, there was no element of a trust in the said funds insofar as the County of Clarendon stands."

Checks for the necessary funds were turned over to the Manning Bank, of which amount $30,000.00 was against a deposit in said bank to the credit of Clarendon County, together with $4,177.00 from another bank. At the same time the Manning Bank had on deposit with the American Bank a sum more than sufficient to pay the amount of the notes. The ledger sheet of the American Bank showed a sufficient balance from that time until it closed. The officials of Clarendon County knew that these notes were not payable at the Manning Bank, but that they were payable at the Equitable Trust Company, in the City of New York. The payment at Manning amounted to the appointment of the Manning Bank as agent for Clarendon County, and it undertook the responsibility to pay the notes or to have funds provided for their payment at the place of payment in New York. To carry out this undertaking, the Manning Bank instructed the American Bank to provide for payment of the notes against its deposit account. This was not done.

We think it a fair inference from the circumstances existing at such times, that the Manning Bank could not have provided funds for payment of these notes other than by recourse to its account with the American Bank. The cash assets of the Manning Bank would have been depleted to the amount of $30,000.00, being the amount of check drawn on the account of Clarendon County with the Manning Bank, and in addition the interest that the Manning Bank was to pay; the balance of the amount necessary to pay the notes came from another source. In the struggling condition evidently existing at that time, although not known to other parties, it is improbable that a draft on the American Bank by the Manning Bank for an amount sufficient to pay the notes would have been honored. In view of the many excuses and other transactions, it is quite evident that Matthews would have found some excuse to decline the payment, if a draft on the American Bank for the necessary amount had been presented.

Nevertheless, the Manning Bank had funds on deposit at the American Bank, more than sufficient in amount to take care of the notes at the time the American Bank was instructed to pay them and continuously until it closed. If the Manning Bank had given Clarendon County a draft on the American Bank for the amount necessary to pay the notes, and the Manning Bank had to its credit at the American Bank a sum sufficient to meet payment of this draft, and the American Bank had closed before the payment of this draft, it would only be reasonable for the Court in its equity jurisdiction to allow Clarendon County to file claim against the American Bank for the amount of its unpaid draft. The Manning Bank had in effect, by directing payment of the notes, transferred so much of the funds to its credit with the American Bank as would be necessary to pay them. Then is it not reasonable that, under the circumstances of this transaction, Clarendon County be held entitled to the dividends paid out by the Receiver of the American Bank

on the amount of this fund, directed to be paid out for Clarendon County?

Evidently his Honor, the Circuit Judge, in his decree confused the doctrine declared in the *Bank of Aynor Case,* 144 S. C., 147, 142 S. E., 239, subsequently approved in the case of *Ex parte Hernlen,* 156 S. C., 181, 153 S. E., 133, 69 A. L. R., 443, with a case of simple constructive trust. As held in the case of *White v. Bank,* 60 S. C., 122, 38 S. E., 453, in order to establish a trust that would entitle one to priority or preferential payment from the assets in the hands of a Receiver of an insolvent bank, the fund itself must be identified in the hands of the Receiver.

One should be able to locate the *"res"* of a fund in order to establish a trust and be entitled to priority payment, or he must establish the existence of a trust *ex maleficio.* In the case referred to the doctrine was declared that there was a difference between the beneficiary of a trust *ex maleficio* and the beneficiary of a simple constructive trust. In the one the beneficiary is entitled to a preference in the distribution of the assets, but in the other he only shares in the assets as a general creditor of the bank.

*In Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239, 243, we find the rule very clearly stated: "It is therefore perfectly logical, as held in the cases of *White v. Bank,* 60 S. C., 122, 38 S. E., 453, and *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510, that in cases of receivership the beneficiary must show that funds have come into the hands of the receivership upon which the trust is to be declared. The beneficiary of a simple constructive trust is no more than an ordinary creditor, except where he can point to a fund in the hands of the receiver upon which his asserted trust is to operate. Otherwise, to allow the trust would grant him a preference over creditors who possess an equity equal to his."

Although the notes were payable at a bank in New York City, and not at the Manning Bank, and it was a matter of irregularity to intrust the Manning Bank

to pay the notes, still there was provided at the Manning Bank funds sufficient for their payment. The Manning Bank received the necessary funds from Clarendon County and undertook as agent to pay the notes with such funds. There is no reason, therefore, why the Manning Bank should not be considered a trustee, constructive, of that fund for the purpose indicated.

The deposit balance appearing on the books of the American Bank to the credit of the Manning Bank was chargeable in equity with the payment of the notes; upon the balance then remaining, whatever it may be, and upon that balance alone, is the Manning Bank entitled to dividends; or to set-off between the parties. Matthews knew all along that $35,031.43 of the deposit in the name of the Manning Bank was a special fund for the payment of the notes. He had been instructed to pay the notes from this account, and agreed to do so if the Manning Bank would make an additional deposit. This was made in the sum of $5,000.00, received and credited to the account of the Manning Bank by the American Bank on June 8th. The fact that Matthews failed to apply the fund for the payment of the notes would not change its character as a trust fund, and it so remained when the bank closed its ·doors. It was a trust fund in the hands of the receiver and could not be used to set off any debt of the Manning Bank. Under these circumstances the deposit was·charged with a trust which the American Bank could have been forced to carry out; the receiver acquired no better title to it than the bank had.

In the case of *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510, the principle of law is very clearly stated with reference to the rights of those who have claims against an insolvent bank.

The principle here involved is clearly and forcefully stated in the recent decision of the United States Circuit Court of Appeals for the Fifth Circuit in the case of *Citizens' & Southern Bank v. Fayram,* 21 F. (2d), 998, 999. In this case plaintiff intrusted his agent to collect a bond and mort-

126

gage and pay the proceeds to an officer of the defendant for reinvestment. The agent received payment of the bond and mortgage but, instead of following his instructions, deposited the money to his own account in the defendant bank. The agent committed suicide and the bank undertook to apply his deposit to the payment of a note of the agent's which it held. Plaintiff sued the bank for his money, and although there was no evidence that the bank had notice of the fraud, the Court held that no right of offset existed and that plaintiff was entitled to recover. Referring to the leading case of *Bank of Metropolis v. New England Bank,* in 6 How., 212, 12 L. Ed., 409, the Court said: "The second Bank of the *Metropolis case* lays down three rules as to the liability of banks to beneficial owners of funds on deposit. Under the first rule, notice to the bank of the trust character of the funds is sufficient to defeat its claim of lien. Under the second rule, if without such notice the bank has changed its position to its injury after the making of the deposit, it is entitled to assert its lien. Under the third rule, if the bank has no such notice, and has not changed its position, it is not entitled to assert its lien. It is only in the absence of notice that the bank can rely upon either the second or the third rule. Under either of these three rules it becomes necessary to determine whether or not there was notice to the bank. If there was that ends the inquiry, and there is no necessity to go further and determine whether or not the bank has changed its position to its injury."

The present case is far stronger than the case just cited, as here the officer of the bank had knowledge of the purpose to which the deposit was to be applied; whereas, in the above, the bank had not been informed.

See, also, *Fulton Natl. Bank v. Hosier* (C. C. A., 5th), 295 F., 611, 12 A. L. R., 1040, note; 13 A. L. R., 324, note. The question does not depend on independent notice to the receiver, but notice to the bank, as the receiver takes over the affairs of the bank with such notice as the bank had. 34 Cyc., 193 and cases cited.

In the recent case of *Peurifoy v. Bank*, 141 S. C., 370, 139 S. E., 793, 795, it was held that a fund on deposit with the First National Bank of Batesburg appearing on its books to the credit of American Bank & Trust Company, and marked "Special Account," was in fact a deposit by the state treasurer. While there was nothing on the books of the Batesburg bank to show that these funds were state funds or that the state treasurer had any interest in such deposit, nevertheless the Court says with reference thereto: "On the other hand, it is equally clear that, if the deposit was a special deposit, impressed with a trust in favor of the state treasurer, it would not be liable to the set-off claimed by the Batesburg bank."

If the deposit to the credit of the Manning Bank was impressed with a trust for the payment of the Clarendon County notes, it would not be available for the set-off claimed by the Manning. Bank. Whether or not such a trust existed is to be determined, not by the book entries or the terminology used by the bank with reference to the deposit, but by the facts. This is made clear in the foregoing case in which, after reviewing the facts surrounding the various deposits, the Court says: "The foregoing shows unmistakably that the Batesburg bank knew all along that the deposit made with it by the Columbia bank was funds of the state."

The American Bank knew all along that $35,031.43, accepting the figures agreed upon by counsel in this case, of the deposit had been set aside by the Manning Bank for the payment of the notes. The receiver is chargeable with the same knowledge.

In the decree of the Circuit Court it was held that the notes were negotiable. The appellants contend that these notes were not negotiable. Whether these notes were or were not negotiable is not a factor of importance in this case. Even if Clarendon County had no legal authority to borrow this money, but received and used the proceeds of the notes, they would constitute an obligation

of Clarendon County for money had and received. *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754; *Lucas v. City of Florence,* 103 S. C., 169, 87 S. E., 996.

Curtis and Sanger have no claim to the fund in the hands of the receiver of the American Bank. They probably would have had the right to charge the amount of their payment to the account of the American Bank, if there had been an account between them. Such does not appear.

In view of the conclusions herein announced it is unnecessary for this Court 'to pass upon any other questions involved in the appeal. Clarendon County should be paid the dividends on the amount of claim, it is entitled to file, by the receiver of the American Bank, not as a prefered creditor, but as a general creditor to share ratably with other creditors of said bank. It will be necessary for the receivers of the two defunct banks to readjust their accounts.

It is the judgment of this Court that the decree of the Circuit Court be reversed, and the case remanded to that Court for such further proceedings as may be necessary to carry out the opinion of this Court.

MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.

MR. CHIEF JUSTICE BLEASE, disqualified.

ORDER

*Per Curiam:*

The appellant, Clarendon County, has filed a petition in this case, asking for a hearing on the Court's order filed September 18, 1931, modifying the decision of the Court filed June 2, 1931.

After consideration of the grounds of the petition, and further and careful consideration of the entire case,

*It is ordered,* That the said order of the Court, filed September 18, 1931, made on petition for rehearing by counsel

for respondents, be, and the same is hereby revoked and withdrawn from the files of the Court; and the paragraph of the Court's opinion, to wit:

"In view of the conclusions herein announced it is unnecessary for this Court to pass upon any other questions involved in the appeal. Clarendon County should be paid the dividends on the amount of claim, it is entitled to file, by the receiver of the American Bank, not as a preferred creditor, but as a general creditor to share ratably with other creditors of said bank. It will be necessary for the receivers of the two defunct banks to readjust their accounts";
directed by said order stricken from the opinion, is hereby restored thereto as part of the same.

*It is further ordered,* That the opinion and decision of this Court filed June 2, 1931, be and the same is hereby, declared to be, in all respects, the judgment of this Court.

*It is further ordered,* That all petitions for rehearing heretofore filed in this case be dismissed.

> JOHN G. STABLER, AJ.
> JESSIE F. CARTER, AJ.
> ROBERT LIDE, AAJ.

December 17, 1931.