### KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.

### PRITCHARD v. GAGE.

No. E 956.

District Court, E. D. South Carolina.

Sept. 27, 1939.

Stoney, Crosland & Pritchard and Buist & Buist, all of Charleston, S. C., for plaintiff.

Nelson, Mullins & Grier, of Columbia, S. C., for defendant.

WYCHE, District Judge.

Plaintiff in this action seeks a decree to direct that certain bonds originally put into a certain trust account be delivered by him to the defendant, and that the defendant thereupon pay to him the amount that the trust was depleted by purchase of the bonds, less any liquidating dividends thereon. The facts have been mostly stipulated, and are substantially as follows:

On November 17, 1927, a trust agreement was made by William R. Pritchard in which the Peoples-First National Bank of Charleston, South Carolina, agreed to act as trustee, and wherein his wife and son, the plaintiff herein, were named as beneficiaries. Thereafter, about June 14, 1928, the National Bank as such trustee purchased from the Peoples Securities Company, for the trust, various securities including $10,000 par value of bonds of Lewis D. Johnson & Sons, Inc., and $10,000 par value of bonds of No. 63 Rutledge Avenue, Inc. On February 27, 1930, by agreement, the Peoples State Bank of South Carolina purchased "the assets and good will of Peoples-First National Bank of Charleston as the same appear on the books of the bank at the close of business on March 1, 1930, except the sum of one million five hundred thousand dollars ($1,500,000) cash, by the assumption of the liabilities of said bank as disclosed on its books at the close of business on March 1, 1930 (not including capital stock, surplus, reserves or undivided profits), and of the costs and expenses incident to the final liquidation of the Peoples-First National Bank of Charleston; provided, that the Board of Directors and/or the stockholders of the Peoples-First National Bank of Charleston shall subscribe, or procure to be subscribed, the additional one million dollars ($1,000,000) of capital divided into one hundred thousand (100,000) shares of stock and the two hundred thousand dollars ($200,000) of surplus which will be authorized to be issued as above set forth,

paying therefor in cash the sum of one million two hundred thousand dollars ($1,200,000) at the time of the settlement with the Peoples-First National Bank of Charleston for its assets." When this purchase was made the National Bank had its principal place of business at Charleston, South Carolina, and the State Bank had its principal place of business at Columbia, South Carolina; some of the directors of the State Bank were also directors of the National Bank, and some of the officers of the National Bank were also officers of the State Bank. However, the State Bank was a corporation distinct and apart from the National Bank, and both had been in existence for some time prior to the sale. The State Bank had numerous branches throughout South Carolina, and numerous stockholders who had no interest in the National Bank by reason of stock ownership or otherwise. After the completion of the sale the trust officer of the National Bank became the trust officer of the State Bank. The Securities Company and the National Bank had a number of common officers and directors. The National Bank owned no stock in the Securities Company, but in June, 1928, the Securities Company owned stock in the National Bank of the value of approximately $155,000 out of total capital stock of the bank outstanding of $1,000,000, and a book value of approximately $1,500,000.

On the 28th day of February, 1930, the beneficiaries of the Pritchard trust executed a written instrument in which they agreed "that the Peoples State Bank of South Carolina be substituted in the place and stead of Peoples-First National Bank of Charleston as Trustee, and request that the Trust Estate be delivered to the Peoples State Bank of South Carolina to be administered in accordance with the terms and conditions of the aforesaid Deed of Trust."

On March 1, 1930, the beneficiaries executed an instrument in writing, acknowledging the correctness of a final accounting made to them by the National Bank as trustee. The National Bank, in an undated instrument in writing, but probated March 11, 1930, resigned as trustee and relinquished and surrendered the trust estate therein created. The State Bank by a written instrument, undated, but probated March 11, 1930, accepted appointment as trustee of the Pritchard trust under the terms and conditions of the same, and acknowledged the receipt from the National Bank of the

proceeds of the trust estate to be administered thereunder, including the bonds in question.

On September 10, 1931, the wife of the creator of the trust died, leaving the plaintiff herein the sole beneficiary thereunder. Shortly thereafter on September 16, 1931, written instruments purporting to be an accounting, receipt, release and discharge of the State Bank as trustee under the said agreement, and creating a new trust with the same trustee, including the bonds in question, all prepared by the trustee, were presented to the plaintiff and signed by him. On December 31, 1931, the State Bank failed and has been in receivership ever since. From June, 1928, up to the time the assets of the National Bank were acquired by the State Bank, the National Bank never had on hand cash and cash items aggregating less than $82,759.33, and from the date the State Bank acquired the assets of the National Bank, the State Bank never had on hand cash and cash items aggregating less than $82,759.33. When the State Bank closed there came into the hands of the receivers cash and cash items in the total sum of $1,154,000. After the bank closed its receivers terminated the trust and delivered the bonds in question to the plaintiff.

Plaintiff claims he is entitled to the decree sought, upon the contention that the National Bank as trustee violated its duty in purchasing the bonds from the Securities Company, on the ground that the purchase by the trustee from the Securities Company in effect amounted to a purchase by the trustee from itself.

■ It is true that a trustee violates his duty to the beneficiary if he sells to himself as trustee his individual property, or property in which he has a personal interest of such a substantial nature that it might affect his judgment. Where a trustee purchases property under such circumstances it is immaterial that he acts in good faith in purchasing the property for the trust, or that he pays a fair consideration therefor, or that any fraud is involved therein. This is true whether a trustee purchases for the trust, property which is owned individually or property owned by a firm of which he is a member, or property owned by a corporation in which he has a controlling or substantial interest. In such a case, the transaction may be rescinded whether or not any fraud was involved in the investment.

■ In this case, however, the National Bank as trustee did not invest the trust funds in securities owned by itself, or by a corporation in which it owned a controlling or substantial interest. On the contrary, the securities purchased by the trustee were owned by the Securities Company. The National Bank did not own any stock in the Securities Company. The interest of the Securities Company in the National Bank was not such a substantial interest to conclude that the National Bank and Securities Company were one and the same. Profits made out of the transaction went to the Securities Company and its stockholders, and not to the National Bank and its stockholders. Under such facts the transaction may not be rescinded upon this ground.

■ The theory of plaintiff's case is that the National Bank, as trustee, invested the trust funds in bonds belonging to the trustee, and that a constructive trust was thereby created so that the beneficiary might rescind the transaction and require the trustee to restore the purchase price with interest, upon the beneficiary returning to him the securities purchased by the trustee. Plaintiff's complaint in effect amounts to a claim for a preference over the creditors of the State Bank. Even assuming the right of the plaintiff to rescind the transaction he still would not be able to recover in this action, because the facts in this case contain none of the elements essential to the establishment of a preferential claim. It is well settled by the federal authorities, including decisions involving this receivership, that before a court of equity may decree a preferential payment from the assets of an insolvent bank in the hands of its receiver the claimant must show: (1) that the bank has received in trust an "identifiable res"; (2) which went to augment the assets of the bank, and (3) which either in its original or substituted form can be so clearly traced into some assets passing to the receiver upon insolvency that a court of equity can see with certainty that the trust property is in his hands. Edisto National Bank v. Bryant, 4 Cir., 72 F.2d 917; Elliott v. Attaway, 4 Cir., 73 F.2d 918; Cook v. Elliott, 4 Cir., 73 F.2d 916; Harmer v. Rendleman, 4 Cir., 64 F.2d 422; Santee Timber Corp. v. Elliott, 4 Cir., 70 F.2d 179, 93 A.L.R. 874; Schuyler v. Littlefield, 232 U.S. 707, 713, 34 S.Ct. 466, 58 L.Ed. 806; Larrabee Flour Mills Co. v. First

National Bank, D.C., 52 F.2d 146, 147; Sanders v. Stevens, D.C., 51 F.2d 743; Empire State Surety Co. v. Carroll County, 8 Cir., 1912, 194 F. 593.

No money or other property came into the hands of the National Bank from the purchase of the bonds from the Securities Company. In the sale of the assets of the National Bank to the State Bank, the State Bank did not acquire any property of the National Bank which was subject to a trust in favor of the plaintiff. There was no identifying money or thing to which a trust could attach. The assets of the National Bank were not augmented by the transaction in question because the purchase price of the bonds was paid to and went into the treasury of the Securities Company and not into the coffers of the National Bank. The plaintiff has failed to trace any identifiable res, either in its original or substituted form, into the hands of the State Bank or its receiver.

The South Carolina Supreme Court draws a distinction between an ordinary constructive trust, and a constructive trust ex maleficio. In an ordinary constructive trust the elements essential to the establishment of a preferential claim are not different from those laid down by federal decisions. White v. Commercial & Farmers' Bank, 60 S.C. 122, 38 S.E. 453; Citizens' Bank v. Bradley, 136 S.C. 511, 134 S.E. 510; Ex Parte Bank of Aynor, 144 S.C. 147, 142 S.E. 239. But in a constructive trust ex maleficio, in this state, if it can be shown that "the misappropriated fund went into the coffers of the corporation prior to the receivership, was disbursed by the corporation in payment of its debts or in the acquisition of property" a preference will result, without proof of other elements essential under the federal decisions. Ex Parte Bank of Aynor, supra. In either event, however, plaintiff cannot recover in this action because no evidence has been produced to show that any alleged misused funds went into the treasury of the National Bank or into the coffers of the State Bank prior to receivership, or that any such fund was disbursed by either of the corporations in payment of its debts or in the acquisition of property.

Having reached this conclusion, I do not deem it necessary to pass upon the other questions raised by the parties.

For the foregoing reasons the complaint will be dismissed, and judgment entered for the defendant.